HILB, ROGAL & HAMILTON AGENCY OF DAYTON, INC. et al., Appellants,

v.

REYNOLDS, Appellee.

[Cite as *Hilb, Rogal & Hamilton Agency of Dayton, Inc. v. Reynolds* (1992), 81 Ohio App.3d 330.]

Court of Appeals of Ohio,
Montgomery County.

No. 13189.

Decided June 10, 1992.

*John J. Heron* and *Jonathan Hollingsworth,* for appellants.

*John A. Cumming,* for appellee.

---

BROGAN, Judge.

The appellants, Hilb, Rogal & Hamilton Agency of Dayton, Inc. et al., appeal the judgment of the Montgomery County Court of Common Pleas overruling, *inter alia,* their motion for reimbursement of attorney fees.

The appellants in this case, Hilb, Rogal & Hamilton Company and Hilb, Rogal and its subsidiary, Hamilton Agency of Dayton, Inc. (hereinafter collectively referred to as "HRH"), are a large insurance and brokerage business.

In January 1986, after leaving employment with another large insurance company, Marc Reynolds, the appellee, began working for HRH as a commercial marketing manager under a one-year employment agreement. The contract was automatically renewable unless either party gave thirty days' notice or the agreement was otherwise terminated. After several renewals, a new agreement was executed in January 1989, naming Reynolds vice president, granting him a salary increase, and adding the following provision:

"8. ATTORNEYS' FEES. If Employee breaches this Agreement and Employer sues Employee to enforce the terms of this Agreement * * * then Employee shall pay all of Employer's costs and fees, including attorney's fees, incurred in obtaining enforcement of this Agreement upon the entry by a court of competent jurisdiction of a final judgment in favor of Employer."

The new agreement also contained two provisions regarding HRH's confidential information. The first stated that Reynolds was to safeguard all confidential information and trade secrets and return all materials to the company upon termination of employment. The second provision contained an employee covenant providing that in order to protect the confidential information to which Reynolds was privy, Reynolds was prohibited for three years from:

"[a] approaching, contacting or soliciting any individual or firm located in Montgomery County and surrounding counties, Ohio, which was a customer, or prospective customer being actively solicited, of the Employer at any time during Employee's term of employment, for the purpose of offering, obtaining, selling, diverting or receiving, to or from said individual or firm, services in the field of insurance or any other business engaged in by the Employer during Employee's term of employment;

"[b] approaching, contacting, or soliciting any individual or firm located in Montgomery County and surrounding counties, Ohio being actively solicited, of the Employer with whom Employee had personal contact or whose name became known to him in the course of the performance of his employment duties while in the employ of the Employer, for the purpose of offering, obtaining, selling, diverting or receiving, to or from said individual or firm, services in the field of insurance or any other business engaged in by the Employer during the Employee's term of employment."

In May 1990, Reynolds declined HRH's request to renew the 1989 agreement, and shortly thereafter resigned and accepted a position with a competitor. Upon leaving HRH, Reynolds allegedly took with him business records which HRH claimed were valuable trade secrets gained by substantial investment and essential for the company to maintain its competitive edge. HRH requested Reynolds to return the property, but allegedly only a portion of them were returned.

This case was initiated on August 13, 1990, when HRH brought suit against Reynolds, asserting, *inter alia*, breach of contract and misappropriation of trade secrets. Other issues in dispute, including the meaning of "surrounding counties," in the aforementioned contract provision, and whether Reynolds had violated a temporary retraining order, were resolved by the trial court in April 1991.

On June 26, 1991, the parties stipulated to an agreed permanent injunction, which prohibited Reynolds from soliciting certain clients as per the original employment agreement, but reduced the duration of this restriction from three years to two. The parties also stipulated to the dismissal with prejudice of counts one through seven of the complaint and Reynolds's counterclaim for commissions due. Thereafter, the sole issue for consideration by the trial court was the enforceability of the clause providing for the reimbursement of the attorney fees incurred by HRH in their breach of contract suit against Reynolds.

On November 15, 1991, the trial court held that there was sufficient consideration to uphold the agreement, but found the provision addressing attorney fees unenforceable under Ohio law. HRH appealed this decision on December 6, 1991.

The appellants advance the following nine assignments of error, asserting that the trial court erred: (1) as a matter of law in overruling their motion for attorney fees; (2) as a matter of law in determining that the attorney fees provision contained within the parties' contract is unenforceable under Ohio law; (3) as a matter of law in determining that the attorney fees provision contained within the parties' employment contract was based upon the trial

court's misapplication of *Miller v. Kyle* (1911), 85 Ohio St. 186, 97 N.E. 372, a case involving the negotiability of a promissory note in a commercial setting; (4) as a matter of law in finding that the parties' employment contract was entered into in a commercial setting; (5) as a matter of law in refusing to enforce the attorney fees provision contained in the parties' employment contract in disregard of the clear authority set forth in *Nottingdale Homeowners' Assn., Inc. v. Darby* (1987), 33 Ohio St.3d 32, 514 N.E.2d 702; (6) as a matter of law in determining that the decision set forth in *Nottingdale, supra,* is limited in its application to attorney fees provisions contained in condominium association declarations and bylaws; (7) in finding the parties to be of unequal bargaining power; (8) by not finding that Reynolds acted in bad faith; and (9) in not striking Reynolds's supplemental brief filed out of rule on October 17, 1991. Reynolds has cross-appealed, asserting that the trial court's finding that the 1989 agreement was supported by sufficient consideration is against the manifest weight of the evidence. In the interest of judicial economy, and due to their substantial similarity, some of these assignments of error will be considered together.

In their first, second, third, fifth, and sixth assignments of error, the appellants assert that the trial court erred as a matter of law in finding the provision for attorney fees unenforceable under Ohio law based upon the holding in *Miller v. Kyle, supra,* and in disregard of the authority set forth in *Nottingdale v. Darby, supra.*

In *Miller,* the Ohio Supreme Court found unenforceable a clause in a promissory note requiring a defaulting borrower to reimburse attorney fees incurred in collecting upon the note. The court followed the American Rule, stating that absent a statutory provision or bad faith such provisions are contrary to public policy. Specifically, the court stated that such clauses would be used to evade usury laws and would result in a proliferation of litigation.

Similarly, the issue in *Nottingdale* was the enforceability of a provision for attorney fees. However, this provision was included in a declaration of condominium ownership and provided for reimbursement of attorney fees should a unit owner default on monies due.

The Supreme Court found this clause enforceable, stating that neither the American Rule nor prior Ohio case law addressed the issue of the enforceability of such a clause in a *contract.* Specifically, the court noted that:

"It has long been recognized that persons have a fundamental right to contract freely with the expectation that the terms of the contract will be enforced. This freedom 'is as fundamental to our society as the right to write and to speak without restraint.' *Government interference with this right*

*must therefore be restricted to those exceptional cases where intrusion is absolutely necessary, such as contracts promoting illegal acts."* (Emphasis added.) *Nottingdale, supra,* 33 Ohio St.3d at 36, 514 N.E.2d at 705–706, citing *Blount v. Smith* (1967), 12 Ohio St.2d 41, 41 O.O.2d 250, 231 N.E.2d 301.

The court concluded by stating that:

"In sum, this court will not interfere with the right of the people of this state to contract freely and without needless limitation. A rule of law which prevents parties from agreeing to pay the other's attorney's fees, absent a statute or prior declaration of this court to the contrary, is outmoded, unjustified and paternalistic." *Nottingdale, supra,* 33 Ohio St.3d at 37, 514 N.E.2d at 706–707.

The enforceability of attorney fees provisions set forth in indemnification agreements has also been considered by the Ohio Supreme Court. In *Worth v. Aetna Cas. & Sur. Co.* (1987), 32 Ohio St.3d 238, 513 N.E.2d 253, the Supreme Court found enforceable an indemnity clause in an employment agreement which required one party to reimburse the attorney fees of the other party necessary to enforce the agreement as against a corporate takeover. This holding was reaffirmed in *Worth v. Huntington Bancshares* (1989), 43 Ohio St.3d 192, 540 N.E.2d 249 (absent specific clause or bad faith, indemnification not contingent on successfully enforcing the contracts's other provisions).

Thus, the Ohio Supreme Court has previously considered the enforceability of contractual clauses providing for reimbursement of attorney fees, and has found them enforceable in certain situations.

■ In light of the Supreme Court's jurisprudence on the issue of attorney fees, we find the trial court's exclusive reliance on *Miller* to have been misplaced. Furthermore, our examination of the trial court's decision indicates that it gave an overbroad interpretation of the holding in *Miller*. In *Miller*, the court found unenforceable and void against public policy the provision for attorney fees in a promissory note because it involved a commercial transaction and could be used to violate usury statutes. The reasoning behind the holding in *Miller* evidences the intent to nullify provisions for attorney fees found in *debt instruments*. As the instant case involves an employment *contract*, we find *Miller* inapplicable.

Nor does this court find that the holding in *Nottingdale* is limited to situations where the provision for attorney fees is found in declarations of condominium ownership and/or condominium bylaws in noncommercial cir-

cumstances, although the syllabus of the case specifically refers to such a situation.

S.Ct.R.Rep.Op. 1(B) states that:

"The syllabus of a Supreme Court opinion states the controlling point or points of law decided in and necessarily arising from the facts of the specific case before the Court for adjudication."

While the syllabus of the opinion states the controlling points of law, the text of the opinion is not to be dismissed or ignored. See *Egan v. Natl. Distillers & Chem. Corp.* (1986), 25 Ohio St.3d 176, 25 OBR 243, 495 N.E.2d 904. The court in *Nottingdale* specifically pointed out that a majority of the states as well as the United States Supreme Court have already recognized the contract exception to the American Rule, and that the basis for enforcing the provision lies in the concept of freedom of contract. Thus, when the syllabus is read in conjunction with the text of the case, it is evident that the court intended to leave the freedom to contract in the hands of contractors without government interference. This intention, combined with the general holding of the case that a provision for reimbursement of *reasonable* attorney fees is enforceable, leads to the conclusion that such provisions in other contracts are indeed enforceable. We find no public policy which would contradict the enforcement of such a provision in the employment agreement in the present case. Accordingly, we find the appellants' first, second, third, fifth, and sixth assignments of error well taken.

In its fourth assignment of error, HRH asserts that the court erred as a matter of law in finding that the parties' employment contract was entered into in a commercial setting.

■ It is well established that parties to a contract in a commercial setting should be free to enter into whatever type of relationship they desire. *Rogers v. Runfola & Assoc., Inc.* (1991), 57 Ohio St.3d 5, 565 N.E.2d 540, rehearing denied (1991), 57 Ohio St.3d 725, 568 N.E.2d 1230. In light of this theory, we read *Nottingdale* to expand this freedom of contract to the noncommercial context rather than restrict it as interpreted by the trial court. Therefore, because the issue of a commercial or noncommercial setting is immaterial in considering the applicability of the holding in *Nottingdale,* this assignment of error is overruled.

In its seventh assignment of error, HRH asserts that the trial court erred in finding the parties to be of unequal bargaining power. While the trial court did not specify how it came to this conclusion, Reynolds argues that he was coerced into signing the 1989 employment agreement under a threat of losing his job, that there was a lack of negotiation in that he was unable to bargain

away unwanted provisions, that the provision granted only HRH the right to attorney fees, and that these factors put HRH in a superior bargaining position. Reynolds's argument that the provision granted only HRH the right to attorney fees will be considered *infra* in our disposition of Reynolds's cross-appeal.

■ Reynolds's assertions that he signed the agreement under a threat of losing his job, and that he was unable to bargain away unwanted provisions, fall under a theory of coercion or duress. Although a contract may in and of itself be considered a threat due to the definition of a threat as the manifestation of an intent to inflict some loss or harm on another, a threat is considered improper when it is made to induce a victim to assent to a contract. Farnsworth, Contracts (1982) 257, Section 4.15. Four requirements are necessary to show duress by threat: (1) there must be a threat; (2) the threat must be improper; (3) the threat must induce the victim's manifestation of assent; and (4) it must be sufficiently grave to justify the victim's assent. *Id.* at 257.

In considering the issue of bargaining power between parties, courts have found that:

"On the one hand, hard bargaining between experienced adversaries ought not to be discouraged. A party will ordinarily be held to an agreement even though his adversity has been taken advantage of, as long as the contract has been shaped by prevailing market forces."

A footnote to this text states:

"A good example is *U.S. v. Bethlehem Steel Corp.* (1942), 315 U.S. [289] 290 [62 S.Ct. 581, 86 L.Ed. 855] (Not duress for shipbuilder to take advantage of government's wartime need for ships); see also *Standard Box Co. v. Mutual Biscuit Co.* (1909), 10 Cal.App. 746, 103 P. 938 (Not duress to set high price for boxes although buyer could not get them elsewhere)." Farnsworth, *supra,* at 263.

■ While threats to withhold goods, services, land, or money to which the victim is entitled under contract may leave the victim with no reasonable alternative, such a threat will not amount to duress if the victim can procure a suitable substitute on the market as a reasonable alternative to succumbing to the threat. *Id.* at 265.

■ While an employment relationship may by definition result in an employer having a slightly better bargaining position than an employee, this disparity in bargaining power is inherent in the relationship and is not sufficient to render a contract unenforceable absent a showing of duress, misrepresentation, fraud, illegality, or other improper action.

Furthermore, as mentioned previously, the employment agreement contained two pertinent clauses, paragraph 5 which stated that Reynolds had access to HRH trade secrets, and paragraph 6 which combined to form a covenant not to compete.

█ We do not find that the inclusion of a covenant not to compete indicates that Reynolds had an unequal bargaining position. Such covenants are commonplace in the business world and will be found valid unless they "[impose] unreasonable restrictions upon an employee [and will then] be enforced to the extent necessary to protect the employer's legitimate interests." *Raimonde v. Van Vlerah* (1975), 42 Ohio St.2d 21, 25–26, 71 O.O.2d 12, 14, 325 N.E.2d 544, 547; accord *Rogers v. Runfola & Assoc., Inc., supra.*

"A covenant restraining an employee from competing with his former employer upon termination of employment is reasonable if it is no greater than is required for the protection of the employer, does not impose undue hardship on the employee, and is not injurious to the public." *Raimonde, supra,* 42 Ohio St.2d at 26, 71 O.O.2d at 14, 325 N.E.2d at 547.

█ Certain factors are considered in determining the reasonableness of such covenants. Among those relevant to the instant case are:

" '[1] [t]he absence or presence of limitations as to time and space[;] * * * [2] whether the employee represents the sole contact with the customer; [3] whether the employee is possessed with confidential information or trade secrets; [4] whether the covenant seeks to eliminate competition which would be unfair to the employer or merely seeks to eliminate ordinary competition; * * * [and] [5] whether the benefit to the employer is disproportional to the detriment to the employee * * *.' " *Id.* at 25, 71 O.O.2d at 14, 325 N.E.2d at 547.

Because these factors are directly applicable to the instant case, HRH had legitimate reasons for including a covenant not to compete in its employment contract to protect itself against employees departing with confidential company information. The reasonableness of this particular covenant cannot be disputed, as it was modified by an agreed stipulation.

In conclusion, we do not find that the factors asserted by Reynolds resulted in HRH being in a superior bargaining position. The record shows that almost immediately after Reynolds declined to sign the agreement, he procured another position at a comparable company with a significant salary increase. The fact that there is to some extent unequal bargaining power between an employee and an employer is in and of itself insufficient to render an agreement unenforceable. While in *Nottingdale* the Ohio Supreme Court acknowledged that in certain circumstances intervention is required, *e.g.,* "[a]

contract of adhesion, where the party with little or no bargaining power has no realistic choice as to terms, would * * * not be supportable," *Nottingdale,* 33 Ohio St.3d at 37, 514 N.E.2d at 707, fn. 7, these circumstances are not present in the instant case. As there is no evidence that this contract granted HRH excessive gains due to a disparity in bargaining power, we find this contract enforceable. Moreover, as more fully discussed *infra,* we agree with the trial court's finding that the contract was supported by consideration. Accordingly, this assignment of error is sustained.

In the eighth assignment of error, appellants assert an alternative argument that the court erred in not finding that Reynolds acted in bad faith.

This court finds that this issue was settled between the parties in the "agreed permanent injunction, decision, order and entry" filed June 26, 1991. Furthermore, this attorney fee provision has been found enforceable pursuant to our disposition of the issues in the appellants' first, second, third, fifth, and sixth assignments of error. Therefore, this assignment of error is overruled.

In its ninth assignment of error, HRH asserts that the court erred in not striking Reynolds's supplemental brief filed out of rule on October 17, 1991.

██ It is undisputed that Reynolds filed his supplemental reply brief past the filing deadline. However, we find that a trial court is accorded considerable discretion with respect to accepting motions filed out of time, and that the acceptance of Reynolds's motion did not constitute an abuse of this discretion. Therefore, HRH's final assignment of error is overruled.

Reynolds advances one cross-assignment of error, asserting that the 1989 agreement is unenforceable due to a lack of sufficient and valid consideration, and that the trial court's finding was against the manifest weight of the evidence.

In contract law, "[t]he extent of the duty created by a contract is not determined by the kind of consideration on which it is based. * * * [T]he slightest consideration is sufficient to support the most onerous obligation, except where the disparity is so gross as to raise a presumption of fraud." (Footnotes omitted.) 17A American Jurisprudence 2d (1991), Section 126; see, also, *Mandel v. Liebman* (1951), 303 N.Y. 88, 100 N.E.2d 149.

██ It is well established that "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus; *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 10 OBR 408, 461 N.E.2d 1273.

■ There is no evidence that the contract in question was so one-sided as to suggest the presence of fraud. We find that the trial court's finding that sufficient consideration was present in this contract is supported by the evidence. Therefore, Reynolds's cross-assignment of error is hereby overruled.

The judgment of the Montgomery County Court of Common Pleas denying HRH reimbursement of reasonable attorney fees is hereby reversed, and the cause is remanded for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

WOLFF, J., concurs.

FAIN, P.J., concurs separately.

FAIN, Presiding Judge, concurring.

I concur fully in the judgment and opinion of the court. I write separately merely to express my concerns about an issue not raised by the parties. The provision for reimbursement of attorney fees expended by the employer in enforcing the "antipiracy" provision is one-sided; if the employee should prevail in the lawsuit brought by the employer, the employee is not entitled to the reimbursement of his attorney fees.

In my view, a one-sided provision for the reimbursement of attorney fees may be unconscionable. I note with approval that at least two states, California and Washington, have provided by statute that a one-sided contractual provision for the reimbursement of attorney fees shall, by operation of law, be made reciprocal, so that either party may recover attorney fees pursuant to such a provision.

We need not decide whether the one-sided contractual provision for attorney fees in the case before us is unconscionable, since the parties have not raised that troublesome issue.