**Samuel TAYLOR, et al., Plaintiffs,**

v.

**LUPER, SHERIFF & NIEDENTHAL CO., L.P.A., et al., Defendants.**

**No. C2–98–350.**

United States District Court,
S.D. Ohio,
Eastern Division.

Nov. 15, 1999.

Stephen C. Shane, Bellevue, KY, for plaintiffs.

Danny L. Cvetanovich, Nancy Manougian, Arter & Hadden LLP, Columbus, OH, for defendants.

## MEMORANDUM OPINION AND ORDER

GRAHAM, District Judge.

On May 20, 1999, the court granted plaintiffs' motion for partial summary judgment and denied defendants' motion for summary judgment. This court held that defendants' efforts to collect attorneys fees in the action they prosecuted against plaintiffs Samuel and Louise Taylor on behalf of their client, National Bank & Trust company, violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, because the recovery of attorneys fees by a creditor in the position of the bank was not permitted by Ohio law and thus violated § 1692f(*l*) of the Act. On July 23, 1999, the court granted defendants' motion for reconsideration of its May 20, 1999 Opinion and Order and granted defendants leave to file an amended answer asserting the bona fide error defense under 15 U.S.C. § 1692k(c). Defendants were also granted leave to file a supplemental memorandum in opposition to plaintiffs' motion for partial summary judgment, which they filed on August 12, 1999. Plaintiffs responded on August 30, 1999 and defendants filed a reply memorandum on September 3, 1999. Accordingly, the motions for summary judgment are again before the court for decision.

The bona fide error defense to the FDCPA is found in Title 15 U.S.C. § 1692k(c):

A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

Defendants assert that if the recovery of attorneys fees pursuant to the provisions of a promissory note in an action filed on behalf of a bank is not permitted under Ohio law, then their action in asserting such a claim in the litigation they prosecuted against the plaintiffs was not an intentional violation of the FDCPA because they reasonably believed that such a claim was permitted under Ohio law. Defendants assert that if they were wrong in their interpretation of the law relating to plaintiffs' liability for attorneys fees, then their violation of the FDCPA was a result of a bona fide error.

Plaintiffs argue that the bona fide error defense does not apply to errors of law or legal judgment but only to clerical mistakes and other similar errors. Thus, under plaintiffs' view, the bona fide error defense could never be invoked by a lawyer who, in good faith, asserted a claim on behalf of a client if a court later ruled that all or part of the claim was unfounded. Under plaintiffs' view, the lawyer would be strictly liable under the FDCPA because the lawyer made a false representation of the character, amount or legal status of the debt, a violation of § 1692e(2)(A) of the Act, or because the lawyer attempted to collect an amount which was not permitted by law, a violation of § 1692f(1) of the Act. If plaintiffs' view is correct, the FDCPA poses serious problems for lawyers.

Canon 7 of the Ohio Code of Professional Responsibility requires a lawyer to represent his or her client "zealously within the bounds of the law." Ethical Consideration 7–2 states, "The bounds of the law in a given case are often difficult to ascertain." Ethical Consideration 7–3 says, "While serving as advocate, a lawyer should resolve in favor of his client doubts as to the bounds of the law."

Disciplinary Rule 7–101 states:

(A) A lawyer shall not intentionally:

(1) Fail to seek the lawful objectives of his client through reasonably available means permitted by law and the Disciplinary Rules[.] ...

Canon 5, on the other hand, states:

A lawyer should exercise independent professional judgment on behalf of a client.

Ethical Consideration 5–2 states:

A lawyer should not accept proffered employment if his personal interests or desires will, or there is a reasonable probability that they will, affect adversely the advice to be given or services to be rendered the prospective client....

If a lawyer who in good faith asserts a claim in litigation may be held personally liable under the FDCPA, then he or she is presented with an irreconcilable ethical dilemma. Similar concerns led the Sixth Circuit Court of Appeals to hold in *Green v. Hocking,* 9 F.3d 18 (6th Cir.1993) that the FDCPA did not apply to lawyers while conducting litigation. In *Green,* 9 F.3d at 21, the court noted some of the anomalies that would result if lawyers were held strictly liable under the FDCPA, including the following:

Section 1692e(5) makes it unlawful to threaten "to take any action that cannot legally be taken or that is not intended to be taken." Assuming a lawsuit is brought, and the consumer prevails to any extent, it would appear that the law has been broken, as the creditor threatened to take action that apparently, as a result of the judgment, "cannot legally be taken."

While the Supreme Court of the United States later held in *Heintz v. Jenkins,* 514 U.S. 291, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995) that the FDCPA did apply to lawyers conducting litigation, thus abrogating *Green,* the Court, 514 U.S. at 295, 115 S.Ct. 1489, specifically responded to the concerns which the Sixth Circuit raised in *Green:*

The [Sixth Circuit] reasoned that, were the Act to apply to litigating activities, this provision automatically would make liable any litigating lawyer who brought, and then lost, a claim against a debtor. *Green, supra,* at 21. But, the Act says explicitly that a "debt collector" may not be held liable if he "shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." § 1692k(c). Thus, even if we were to assume that the suggested reading of § 1692e(5) is correct, we would not find the result so absurd as to warrant implying an exemption for litigating lawyers.

It seems clear from the above language that the Supreme Court of the United States believes that the bona fide error defense is available to a lawyer who commits an unintentional violation of the FDCPA by asserting in good faith a claim that is later rejected by a court. The availability of the bona fide error defense was the avenue through which the Supreme Court applied the act to lawyers conducting litigation while avoiding the problem the Sixth Circuit identified in *Green.*

Plaintiffs cite a number of cases in which courts have held that the bona fide error defense does not apply to mistakes of law. However, in these cases, the mistake of law asserted as a defense was a mistake as to the applicability of the Act itself. *See e.g. Baker v. G.C. Services Corp.,* 677 F.2d 775, 778–79 (9th Cir.1982) (debt collector mistaken about FDCPA requirement that debtor receive written notice of right to dispute debt); *Hulshizer v. Global Credit Services, Inc.,* 728 F.2d 1037, 1038 (8th Cir.1984) (debt collector mistaken about FDCPA requirement to disclose that he is attempting to collect a debt); *Pipiles v. Credit Bureau of Lockport, Inc.,* 886 F.2d 22, 26–27 (2d Cir.1989) (debt collector mistaken about FDCPA requirement to disclose that he is attempting to collect a debt). Here, the mistake of law relied upon to invoke the bona fide error defense was not a mistake about the requirements of the FDCPA itself. It was instead a mistake about whether the collection of a certain fee, charge or expense incidental to the principal obligation, attorneys fees, was permitted under the law of the state of Ohio.

There is nothing in the language of 15 U.S.C. § 1692k(c) which limits its application to clerical mistakes or ministerial errors. The Truth in Lending Act ("TILA"), 15 U.S.C. § 1640(c), incorporates a somewhat similar bona fide error defense but it contains additional language which is not present in 15 U.S.C. § 1692k(c). Section 1640(c) provides in part:

Examples of a bona fide error include, but are not limited to, clerical, calculation, computer malfunction and programming, and printing errors[.] ...

The absence of such language in 15 U.S.C. § 1692k(c) suggests that, in the case of the FDCPA, Congress did not intend to limit the defense to clerical errors. *See Jenkins v. Heintz,* 124 F.3d 824, 832, n. 7 (7th Cir.1997).

■ The court concludes that the bona fide error defense includes errors of law relating to the character, amount or legal status of the debt and the debtor's liability for any interest, fee, charge or expense incidental to the principal obligation and that the defense is not limited to clerical or administrative errors as plaintiffs contend. Although lawyers are liable under the FDCPA to the same extent as any other debt collector, a lawyer may invoke the bona fide error defense where the lawyer unsuccessfully but in good faith asserts a claim on behalf of a client. *See Simmons v. Miller,* 970 F.Supp. 661 (S.D.Ind.1997).

■ Ordinary debt collectors are not held strictly liable when they mistakenly attempt to collect amounts in excess of what is due when they reasonably rely on information provided by their clients. *See e.g. Smith v. Transworld Systems, Inc.,* 953 F.2d 1025, 1032 (6th Cir.1992); *Jenkins v. Union Corp.,* 999 F.Supp. 1120, 1140–1141 (N.D.Ill.1998); *Ducrest v. Alco Collections, Inc.,* 931 F.Supp. 459 (M.D.La. 1996). *See also Amond v. Brincefield, Hartnett & Associates, P.C.,* 175 F.3d 1013 (1999), 1999 WL 152555 (4th Cir.1999) and *Jenkins v. Heintz,* 124 F.3d 824 (7th Cir. 1997). By the same token, lawyers should not be held strictly liable when they discharge their ethical duty to a client by asserting in good faith a claim which is ultimately rejected by a court.

■ Defendants have supported their opposition to plaintiffs' motion for summary judgment with the affidavit of Mark J. Sheriff, who is the head of the collection department at the defendant law firm.

Paragraph 5 of Mr. Sheriff's affidavit states the following:

At the time the complaint was filed against Mr. and Mrs. Taylor, I held the belief that the attorney-fee provision of the promissory note was valid and enforceable and that attorney fees accordingly could be demanded as authorized by the note. That belief was based on Ohio cases I had reviewed prior to the time the complaint was filed, which hold that contractual provisions authorizing the recovery of attorney fees on default are valid and enforceable, including *Nottingdale Homeowners' Assoc., Inc. v. Darby*, 33 Ohio St.3d 32, 514 N.E.2d 702 (1987); *Com–Corp Industries, Inc. v. H&H Machine Tool Co.*, 1996 WL 631100 (Ohio Ct.App., 8th Dist. Cuyahoga County Oct. 31, 1996); *Goldfarb v. Robb Report, Inc.*, 101 Ohio App.3d 134, 655 N.E.2d 211 (Franklin County 1995); *Gaul v. Olympia Fitness Center, Inc.*, 88 Ohio App.3d 310, 623 N.E.2d 1281 (Cuyahoga County 1993); *Hilb, Rogal & Hamilton Agency of Dayton, Inc. v. Reynolds*, 81 Ohio App.3d 330, 610 N.E.2d 1102 (Montgomery County 1992); *Georgetown of Highlands Condominium Owners Assoc. v. Yelsky*, 1991 WL 244471 (Ohio Ct.App., 8th Dist. Cuyahoga County Nov. 21, 1991); *GMS Management Co., Inc. v. K & K Industries, Inc.*, 1991 WL 70154 (Ohio Ct. App., 5th Dist. Stark County Apr. 29, 1991); and *First Federal Savings Bank v. WSB Investments, Inc.* 67 Ohio App.3d 277, 586 N.E.2d 1159 (Cuyahoga County 1990). That belief was also based on my experience in collection cases in which I was involved and in which Ohio trial courts awarded attorney fees that were sought by my creditor clients.

Mr. Sheriff's affidavit discloses the defendants' rationale for asserting a claim for attorney fees in the debt collection litigation it prosecuted against the plaintiffs. The court agrees that a good faith argument can be made for the recovery of attorney fees in such a case and that it was reasonable for defendants to believe that attorneys fees were recoverable in the bank's lawsuit against the plaintiffs. Since the decision of the Supreme Court of Ohio in *Nottingdale Homeowners' Assoc., Inc. v. Darby*, 33 Ohio St.3d 32, 514 N.E.2d 702 (1987) holding that provisions in condominium agreement requiring defaulting owner to pay attorneys fees of condominium association was enforceable, it has been arguable that an agreement to pay attorneys fees as part of a debt obligation is enforceable in the courts of Ohio. While this court has held that such an agreement is not enforceable, other judges, including another judge of this court, have reached the opposite conclusion. *See Cook v. VFS, Inc.*, Case No. C3–96–191, (unreported) (S.D.Ohio 1998) (Rice, Chief Judge), Defendants' Motion For Summary Judgment, Exhibit B.

The bona fide error defense includes a "maintenance of procedures" element which requires proof that the mistake occurred "notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). Mr. Sheriff's affidavit addresses this element. In ¶ 3 of his affidavit, Mr. Sheriff outlines the procedures the defendant law firm employs to avoid violating the FDCPA. These include regular attendance at seminars regarding the Act and receiving and reviewing newsletters regarding the Act. This paragraph of the affidavit concludes with this statement:

Prior to filing an action to recover a debt, we are required to review the contract that forms the basis for the complaint to ensure that the amount sought in the complaint is expressly authorized by the contract and would be recoverable under Ohio law.

Mr. Sheriff's affidavit satisfies the defendants' burden of proof under 15 U.S.C. § 1692k(c) and plaintiffs have failed to effectively rebut the affidavit. Defendants have established the elements of the bona fide error defense to the FDCPA and

plaintiffs have failed to raise any genuine issue of material fact regarding any of the elements of that defense.

On September 20, 1999, plaintiffs moved for summary judgment on their claim under the FDCPA that the amount of attorneys fees which the defendants sought was excessive and that this constituted an independent violation of several provisions of the FDCPA. Defendants initially moved for summary judgment on all of plaintiffs' claims and plaintiffs initially moved for summary judgment on all of their FDCPA claims but, in its opinion and order of May 20, 1999, the court did not specifically address plaintiffs' FDCPA claims based on defendants' attempt to recover excessive attorneys fees.

Plaintiffs argue that defendants' assertion of a claim for attorneys fees in the amount of $3,174.00 based on a one-third contingent fee agreement with their client as an effort to collect an unconscionable fee. Plaintiffs further argue that by asserting such a claim, defendants falsely represented the services rendered or compensation which may be lawfully received in connection with the collection of the debt in violation of 15 U.S.C. § 1692e(2)(B) and attempted to collect an amount in excess of what was lawfully owed in violation of 15 U.S.C. § 1692f(1). In the underlying state court action, the court ultimately denied the bank's claim for attorneys fees on the grounds that the bank had not yet incurred any attorneys fees because it had not yet recovered any monies from the plaintiffs.

Plaintiffs argue that the note and applicable Ohio law limit defendants' recovery of attorneys fees to an amount that is "reasonable". According to plaintiffs, if defendants were entitled to recover attorneys fees on behalf of the bank, such fees were required to be calculated in accordance with the "lodestar" approach outlined in *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) and its progeny. *See, e.g., North-*

*cross v. Bd. Of Educ. of Memphis City Schools*, 611 F.2d 624, 636 (6th Cir.1979).

Defendants assert that the amount of attorneys fees they sought to recover in the litigation against the plaintiffs was determined pursuant to a verbal contingent fee agreement with their client, National Bank and Trust Company. Mr. Sheriff's affidavit attests to the existence of that contingent fee agreement. While plaintiffs argue that defendants have failed to produce a written contingent fee agreement, plaintiffs have failed to direct the court to any Ohio law which requires that such an agreement be in writing. Plaintiffs have failed to produce any evidence rebutting Mr. Sheriff's affidavit, and the court concludes that there is no genuine issue of fact regarding the existence of a one-third contingent fee agreement between the defendant law firm and its client bank.

■ When the defendant law firm asserted a claim for attorneys fees which was equal to its one-third contingent fee agreement with the bank, the claim, if successful, would have resulted in the bank's recovery of the fees it would actually have been obligated to pay to its attorneys. Thus, defendants asserted a claim which was designed to make the bank whole. Under Ohio law, an award of reasonable attorneys fees in favor of a successful party may be based upon the contingent fee agreed upon between the successful party and its attorney. *See Central Trust Co., N.A. v. Warburg*, 104 Ohio App.3d 186, 661 N.E.2d 275 (1995).

Apparently, Ohio law does not limit a successful litigant to an attorneys fee award calculated under the lodestar approach. Even if it did, the fees defendants sought to recover would not have been excessive. Defendants have presented an affidavit attesting to the fact that Mr. Sheriff spent in excess of twenty-five hours in performing legal work for the bank in connection with its state court action against the plaintiffs. His work included the preparation of pleadings, the preparation of a motion for summary judg-

ment and reply memorandum in support thereof, attention to discovery matters, and attendance at three pretrial hearings in Adams County, Ohio. According to his affidavit, Mr. Sheriff's hourly rate is $185 per hour and the total value of his legal services, if billed on the basis of his hourly rate and hours worked, would exceed $4,625.00. Plaintiffs have not challenged the reasonableness of Mr. Sheriff's hourly rate, nor have they effectively rebutted his affidavit regarding the amount of time he devoted to representing the bank in its action against the plaintiffs.

Plaintiffs assert that the fees defendants attempted to recover from the plaintiffs were unreasonable on the grounds that Sheriff conceded in his deposition that he had " 'probably no more than one hour' invested in the case after he drafted and filed the complaint in the Adams County Court on July 9, 1998." Motion for Summary Judgment, Part II, page 5. This is a distortion of Mr. Sheriff's testimony. In the deposition testimony which plaintiffs refer to, Mr. Sheriff was responding to a question which was specifically directed to the amount of time he had devoted to the case at the time the complaint was filed on January 9, 1998. His answer did not include any of the subsequent services referred to in his affidavit. Plaintiffs have failed to raise any genuine issue of material fact regarding the total amount of time Mr. Sheriff devoted to his representation of the bank. There is no genuine issue of fact regarding plaintiffs' claim that the amount of fees which defendants sought to recover on behalf of their client violated the FDCPA because the fees sought were excessive and unreasonable.

For the reasons stated above, defendants are entitled to summary judgment on plaintiffs' claims under the FDCPA.

Claim Two of plaintiffs' complaint is a state law claim based upon alleged violations of the Ohio Consumers Sales Practices Act, Ohio Rev.Code § 1345.01.01 *et seq.* Plaintiffs allege that defendants' efforts to recover attorneys fees of $3,174.90 in connection with the collection of a consumer debt violated Ohio Rev.Code § 1345.02(A). Claim Three of the complaint is a claim for permanent injunctive and declaratory relief under the Ohio Consumer Sales Practices Act, wherein plaintiffs seek a declaration that defendants' conduct was either deceptive, unfair or unconscionable and a permanent injunction preventing defendants from engaging in further and future conduct of the same kind and character.

■ Now that the court has concluded that defendants are entitled to summary judgment on plaintiffs' federal claims, this court may decline to exercise jurisdiction over the state law claims. *See* 28 U.S.C. § 1367(c)(3); *Saglioccolo v. Eagle Ins. Co.,* 112 F.3d 226 (6th Cir.1997); *Valot v. Southeast Local School Dist. Bd. Of Educ.,* 107 F.3d 1220 (6th Cir.1997). Indeed, " 'if the federal claims are dismissed before trial, ... the state claims [generally] should be dismissed as well.' " *Taylor v. First of America Bank–Wayne,* 973 F.2d 1284, 1287 (6th Cir.1992) (quoting *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)).

■ This court is mindful of the need to weigh the interests of judicial economy and avoidance of multiplicity of litigation against the threat of needlessly deciding state law claims. *See Landefeld v. Marion General Hosp., Inc.,* 994 F.2d 1178, 1182 (6th Cir.1993). However, these claims raise novel, complex and important issues of state law. The court therefore declines to exercise supplemental jurisdiction over plaintiffs' state law claims under 28 U.S.C. § 1367.

In accordance with the foregoing, defendants' motion for summary judgment on plaintiffs' claims under the FDCPA is granted, and the clerk is directed to enter judgment in favor of the defendants and against plaintiffs on those claims. The court declines to exercise jurisdiction over plaintiffs' state law claims, and the Clerk

shall enter judgment dismissing those state law claims without prejudice.

It is so ORDERED.