**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**April 4, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

BRENDA JOHNSON,

       Plaintiff-Appellant,

v.

JESSE L. RIDDLE; RIDDLE &
ASSOCIATES, P.C.; JOHN DOE
OWNERS 1-10; JOHN DOE
COLLECTORS 1-10,

       Defendants-Appellees.

No. 04-4036

---

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 2:98-CV-599-PGC)**

---

Lester A. Perry; Hoole & King; Salt Lake City, UT, for Plaintiff-Appellant.

Keith A. Kelly; Ray, Quinney & Nebeker; Salt Lake City, UT, for Defendants-Appellees.

---

Before **HENRY, EBEL,** and **TYMKOVICH**, Circuit Judges.

---

**EBEL**, Circuit Judge.

---

      Defendants-Appellees Jesse Riddle and Riddle & Associates (collectively,

"Riddle") violated the Fair Debt Collection Practices Act ("FDCPA" or "Act"),

15 U.S.C. §§ 1692–1692o, by filing suit against Plaintiff-Appellant Brenda Johnson ("Johnson") to recover statutory shoplifting penalties for a dishonored check under Utah law. See Johnson v. Riddle [hereinafter Johnson II], 305 F.3d 1107, 1121 (10th Cir. 2002). This case is now before us on appeal a second time, after our remand to the district court with instructions to determine whether the FDCPA's bona fide error defense shielded Riddle from liability for that violation. See id. at 1124.

On remand, the district court granted summary judgment in favor of Riddle after concluding that Riddle "established through undisputed fact a bona fide error defense to [Johnson's] FDCPA claims against him." Johnson v. Riddle [hereinafter Johnson III], 296 F. Supp. 2d 1283, 1284 (D. Utah 2003). Johnson appeals.

Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we review the district court's grant of summary judgment de novo, applying the same standard used by the district court.[1] See Burnham v. Humphrey Hospitality Reit Trust, Inc., 403

---

[1] In this case, we note that, in reciting the applicable summary judgment burdens, the district court incorrectly stated that "[t]he non-moving party must establish at least 'an inference of the existence of each element essential to the case.'" Johnson III, 296 F. Supp. 2d at 1286 & n.16 (citing Croy v. Cobe Labs., Inc., 345 F.3d 1199, 1201 (10th Cir. 2003)). That standard of review only applies when the motion for summary judgment by the defendant is directed at deficiencies in the plaintiff's case. See Croy, 345 F.3d at 1201. Where, as here, the defendant is seeking summary judgment on the basis of an affirmative defense,

(continued...)

- 2 -

F.3d 709, 714 (10th Cir. 2005). Applying those standards, we conclude that neither Riddle nor Johnson is entitled to judgment as a matter of law because triable issues of fact exist regarding each element of the bona fide error defense. We therefore REVERSE the district court's grant of summary judgment in favor of Riddle, AFFIRM the district court's denial of summary judgment in favor of Johnson, and REMAND this case.

## I. BACKGROUND

The controversy in this case revolves around the fact that the statutory penalty allowed to a creditor bringing a dishonored check claim in Utah at the time relevant to this case was $15 plus the face value of the check. Utah Code Ann. § 7-15-1 However, if such a claim could somehow be cast as a shoplifting charge, the allowable statutory penalty would be up to $500. Id. § 78-11-15. In our earlier opinion, we determined that it was "unmistakably clear" that Utah law

---

[1](...continued)
> [t]he defendant . . . must demonstrate that no disputed material fact exists regarding the affirmative defense asserted. If the defendant meets this initial burden, the plaintiff must then demonstrate with specificity the existence of a disputed material fact. If the plaintiff fails to make such a showing, the affirmative defense bars his claim, and the defendant is then entitled to summary judgment as a matter of law.

Hutchinson v. Pfeil, 105 F.3d 562, 564 (10th Cir. 1997) (citations omitted). Thus, the plaintiff initially bears no burden on a defendant's summary judgment motion testing an affirmative defense. In this case, we therefore apply the summary judgment standard that "should have been applied by the district court." Nance v. Sun Life Assur. Co. of Canada, 294 F.3d 1263, 1266 (10th Cir. 2002) (quotation, alteration omitted).

did not authorize an ordinary dishonored check claim to be recast as a shoplifting charge in order to claim the higher statutory penalties. Johnson II, 305 F.3d at 1119-1120.

Riddle, as attorney for 7-Eleven (the Southland Corporation), brought a shoplifting claim against Johnson, in a suit asking for $2.64 (the face value of her dishonored check to 7-Eleven) and $250 (statutory penalties for shoplifting). Id. at 1112. Ultimately, that suit was dismissed when Johnson paid $17.64; that is, the value of the check plus the $15 dishonored check penalty. Id. However, that was not the end of the controversy. Johnson then brought a class-action claim under the FDCPA against Riddle, claiming that the practice of bringing shoplifting charges against the maker of a dishonored check violated the FDCPA. Id. In our earlier opinion, we concluded that this practice did violate the FDCPA, but we remanded for the district court to determine whether Riddle was entitled to a bona fide error defense predicated upon a bona-fide mistake of law. Id. at 1120, 1124. The district court concluded that he was and granted summary judgment for Riddle. Johnson III, 296 F. Supp. 2d at 1284, 1294. We now reverse.

The facts pertaining to the bona fide error defense are as follows: In a letter Riddle wrote to his client on May 12, 1995, he discussed the possibility of bringing shoplifting actions in Utah state courts against dishonored check writers. In that letter, he explained that the Utah shoplifting statute required a showing

that the merchandise was taken from the merchant without payment and without permission and that "[o]ne could certainly argue that presenting a check and taking merchandise is not a taking 'without the permission of the merchant.'" The opinion letter continued by stating that:

> It would be difficult for [Riddle & Associates] to predict the outcome of [a] case [seeking shoplifting penalties for a dishonored check]. Utah case law is silent on the issue, and I can find no other jurisdiction that has case law interpreting such a statute. The outcome depends on the courts [sic] interpretation of [the shoplifting] statute. . . . I can see no legal or ethical reason that we should not file a test case and allow the courts to decide.

Riddle subsequently filed a complaint in Utah state court seeking a shoplifting penalty on a dishonored check. See Johnson II, 305 F.3d at 1112. "When the defendant in the case failed to appear in court," Judge Burton, the presiding judge, and Riddle "spent thirty to forty minutes discussing the applicability of the shoplifting statute to a person who passed a check that was dishonored. The court issued a default judgment awarding 'Statutory penalties' of $354.82." Id. Default judgments awarding statutory penalties in excess of the $15 penalty allowed for an ordinary dishonored check claim were issued in three other unpublished state court cases. See Johnson v. Riddle [hereinafter Johnson I], No. 2:98CV599C, 2000 WL 33980012, at *1 (D. Utah 2000) (unpublished); see also Johnson II, 305 F.3d at 1112. None of these default judgments were appealed. Johnson II, 305 F.3d at 1112.

In 1997, two months before Riddle filed a shoplifting claim against Johnson for her dishonored check, Riddle and another collection attorney, DeLoney, attended a meeting with two judges: Judge Burton, who had issued the default judgment awarding shoplifting penalties in Riddle's test case, and Judge Fratto, who was newly appointed to the bench. Johnson III, 296 F. Supp. 2d at 1288. At that meeting, Judge Fratto told Riddle that he "had some real problems with the shoplifting statute applying to a bad check." Id. (quotation omitted). After that meeting and prior to filing suit against Johnson, Riddle "was very concerned that [the shoplifting statute] didn't apply to a bad check" and "didn't want to do it [i.e., attempt to collect such fees,] anymore." Id. (quotation omitted). Six days after that meeting, Judge Fratto notified DeLoney, per their agreement at the meeting, that no further default judgments containing shoplifting penalties would be signed by the state court. And, at some later date, some Utah state trial judges "began limiting fee awards in default judgment cases to $15." Johnson II, 305 F.3d at 1112.

Nevertheless, on August 14, 1997, Riddle filed suit in Utah state district court against Johnson seeking a $250-shoplifting penalty for a dishonored check Johnson wrote for $2.64 to 7-Eleven in September 1996. Id. After being served with the complaint and summons in that suit on August 24, 1997, Johnson paid Riddle $17.64. Riddle then dropped his suit against Johnson. Id.

On August 24, 1998, Johnson filed a class action suit in federal court against Riddle on behalf of all persons against whom Riddle had claimed shoplifting penalties for a dishonored check, alleging that such a practice was not permitted by Utah law and therefore violated the FDCPA and various state statutes. Id. Riddle and Johnson then filed cross-motions for summary judgment. Id. The district court granted summary judgment in favor of Riddle, "reasoning that Riddle's practice was 'permitted by law' because of earlier unpublished state trial court default judgments." Id.; see also Johnson I, 2000 WL 33980012, at *6. Johnson appealed.

In that first appeal, we reversed on the issue of Riddle's compliance with the FDCPA, holding that the district court should have conducted a proper Erie analysis rather than relying on unpublished state trial court decisions to determine whether Riddle's actions were "permitted by law." Johnson II, 305 F.3d at 1118-1119, 1121. Specifically, we concluded that the district court erroneously "regarded itself as bound by unpublished state trial court decisions granting default judgments for amounts in excess of the statutory fee for dishonored checks." Id. at 1118. We explained that "[w]hen the federal courts are called upon to interpret state law, the federal court must look to the rulings of the highest state court, and, if no such rulings exist, must endeavor to predict how that high court would rule." Id. Conducting such an Erie analysis, we held that

"[b]y seeking to collect a shoplifting penalty where no shoplifting (as the term is defined by Utah statute) occurred, Riddle sought to collect an amount not permitted by law in violation of the FDCPA." Id. at 1120.[2] However, we further held that the FDCPA's bona fide error defense, which shields a debt collector from liability for a violation, can apply to a mistake of law which resulted in an attempt to collect amounts not permitted by law, as well as mistakes of fact. Id. at 1121. We remanded to the district court for a determination in the first instance of whether Riddle was entitled to this defense. See id. at 1121 n.13, 1124.

---

[2] Under Utah's dishonored check statute in effect at the time of Riddle's suit against Johnson, the holder of a dishonored check was permitted to impose a "service charge that may not exceed $15" plus the face value of the check. Utah Code Ann. § 7-15-1.

Under Utah's shoplifting statute, a separate statute:

> An adult who wrongfully takes merchandise by any means, including but not limited to, concealment or attempted concealment in any manner, either on or off the premises of the merchant, with a purpose to deprive a merchant of merchandise or to avoid payment for merchandise, or both, is liable in a civil action, in addition to actual damages, for a penalty to the merchant in the amount of the retail price of the merchandise not to exceed $1,000, plus an additional penalty as determined by the court not less than $100 nor more than $500, plus court costs and reasonable attorneys' fees.

Id. § 78-11-15. The statute defines "wrongful taking of merchandise" as "the taking of merchandise that has not been purchased from a merchant's premises without the permission of the merchant or one of his employees, servants or agents." Id. § 78-11-14(5).

On remand, the district court held that Riddle had "successfully established the bona fide error defense" and therefore "[could not] be held liable to Johnson under the FDCPA." Johnson III, 296 F. Supp. 2d at 1294. The court then denied Johnson's motion for summary judgment on the issue of Riddle's liability under the FDCPA, granted Riddle's cross-motion for summary judgment, and dismissed Johnson's FDCPA claim with prejudice. Id. Having concluded that Riddle was not liable under federal law, the district court denied Johnson's motion for class certification as moot and declined to exercise supplemental jurisdiction over Johnson's remaining state law claims. Id.

## II. Bona Fide Error Defense

The bona fide error defense is an affirmative defense that insulates debt collectors from liability even when they have violated the FDCPA. Specifically, the bona fide error provision provides that:

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c). Accordingly, and as we explained in the prior appeal of this case, an FDCPA defendant seeking the protection of the bona fide error defense carries the burden of proving that the violation was 1) unintentional, 2) a bona fide error, and 3) made despite the maintenance of procedures reasonably

adapted to avoid the error.  See Johnson III, 296 F. Supp.2d at 1287; see also

Johnson II, 305 F.3d at 1121.  Because we conclude that genuine issues of

material fact exist with regard to each element of the defense, we conclude that

this case should go to the jury.


**A.  Subjective prong:  Whether the violation was unintentional.**

"[T]he case law . . . is somewhat unsettled" as to what makes a violation

intentional; that is, whether it is the general intent to collect a debt or whether it

is the specific intent to violate the FDCPA. Caputo v. Prof'l Recovery Servs.,

Inc., 261 F. Supp. 2d 1249, 1255 (D. Kan. 2003).  Compare Kort v. Diversified

Collection Servs., Inc., 394 F.3d 530, 537 (7th Cir. 2005) (holding that the bona

fide error defense requires only negation of specific intent); Lewis v. ACB Bus.

Serv., Inc., 135 F.3d 389, 402 (6th Cir. 1998) (same), with Shapiro v. Haenn, 222

F. Supp. 2d 29, 43 n.8 (D. Me. 2002) ("Because the FDCPA is a strict liability

statute . . . , debt collectors are liable if they perform any intentional act that

results in a violation, regardless of fault.") (citation omitted); Irwin v. Mascott,

112 F. Supp. 2d 937, 963 (N.D. Cal. 2000) (noting that a FDCPA plaintiff "need

only prove that (1) the [d]efendants knew what practices they were engaged in,

and (2) the practices violated the FDCPA").  We conclude, in accordance with the

Sixth and Seventh Circuits, that the only workable interpretation of the intent prong of the FDCPA's bona fide error defense is that a debt collector must show that the violation was unintentional, not that the underlying act itself was unintentional. In other words, a violation is unintentional for purposes of the FDCPA's bona fide error defense if the debt collector can establish the lack of specific intent to violate the Act.

We find it informative, in this regard, that § 1692K(c) requires proof that "the violation" was not intentional, as opposed to proof that "the conduct" was not intentional. See S. Rep. No. 95-382, at 5 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1700 ("A debt collector has no liability, however, if he violates the act in any manner, including with regard to the act's coverage, when such a violation is unintentional and occurred despite procedures designed to avoid such violations.") (emphasis added); see also Caputo, 261 F. Supp. 2d at 1255 (recognizing that both the language of the FDCPA and the legislative history are more consistent with a specific intent requirement). Furthermore, we expressly decided that the FDCPA's bona fide error defense covers mistakes of law, and it would make little sense to require a debt collector to negate general intent for an error of law defense. See Lewis, 135 F.3d at 402 ("To hold otherwise would effectively negate the bona fide error defense."); Johnson III, 296 F. Supp. 2d at 1287 (concluding that mere "intentional pursuit of a debt in a

certain manner does not defeat the bona fide error defense, <u>particularly in the context of a legal error</u>") (emphasis added).

Using this specific intent approach, we agree that "'the issue of intent becomes principally a credibility question as to the defendants' <u>subjective</u> intent to violate the [FDCPA].'" <u>Johnson III</u>, 296 F. Supp. 2d at 1287 (quoting <u>Caputo</u>, 261 F. Supp. 2d at 1257) (emphasis added).  In other words, the intent prong of the bona fide error defense is a subjective test.  Here, although the record indicates that Riddle explicitly denied any intent to violate the FDCPA, <u>id.</u>, subjective intent can often only be shown by inferential evidence.[3]  Thus, the extent to which Riddle should have objectively realized that his actions were in violation of law may be inferentially probative of the subjective intentional nature of that violation.  We therefore immediately turn to the objective analysis required by the second and third prongs of the bona fide error defense.

**B.      Objective prongs:  Whether the error was bona fide and whether the debt collector maintained procedures reasonably adapted to avoid error.**

To be entitled to the bona fide error defense, a debt collector's error must be bona fide and he must have maintained procedures reasonably adapted to avoid error.  <u>See</u> 15 U.S.C. § 1692k(c); <u>see also</u> <u>Johnson II</u>, 305 F.3d at 1121.  Whereas

---

[3]  We note that even under criminal law specific intent analysis, "a jury is permitted to draw inferences of subjective intent from a defendant's objective acts."  <u>Wingfield v. Massie</u>, 122 F.3d 1329, 1333 (10th Cir. 1997).

the intent prong of the bona fide error defense is a subjective test, the bona fide and the procedures prongs are necessarily objective tests. See Kort, 394 F.3d at 538; Rosado v. Taylor, 324 F. Supp. 2d 917, 933 (N.D. Ind. 2004); Caputo, 276 F. Supp. 2d at 1257-58; Shapiro, 222 F. Supp. 2d at 43; Hartman v. Meridian Fin. Servs., Inc., 191 F. Supp. 2d 1031, 1045 (W.D. Wis. 2002); Edwards v. McCormick, 136 F. Supp. 2d 795, 801 n.8 (S.D. Ohio 2001). The district court explained, and we agree, that "'[i]n effect, [the bona fide] component serves to impose an objective standard of reasonableness upon the asserted unintentional violation.'" Johnson III, 296 F. Supp. 2d at 1288 (quoting Caputo, 261 F. Supp. 2d at 1257); see also Nance v. Ulferts, 282 F. Supp. 2d 912, 920 (N.D. Ind. 2003) ("[M]istakes of law . . . must not only be unintentional, they must also be reasonable."). And the procedures prong, by the express language of the statute, must be "reasonably adapted to avoid" the error that occurred. 15 U.S.C. § 1692k(c) (emphasis added).

Where, as here, the case involves a mistake of law, whether the debt collector's mistake was bona fide will often turn on the debt collector's due diligence practices. As a result, the bona fide prong and the procedures prong will often merge; here, one inquiry drives the other. We therefore focus our analysis on whether Riddle's procedures were reasonable based on the facts of this case.

As the text of § 1692k(c) indicates, the procedures component of the bona fide error defense involves a two-step inquiry: first, whether the debt collector "maintained"—i.e., actually employed or implemented—procedures to avoid errors; and, second, whether the procedures were "reasonably adapted" to avoid the specific error at issue. See 15 U.S.C. § 1692k(c); see also Jenkins v. Heintz, 124 F.3d 824, 834, 835 (7th Cir. 1997) (finding debt collector conclusively established procedures prong where the debt collector actually employed both general procedures to comply with the FDCPA and specific procedures designed to avoid the error at issue); Frye, 193 F. Supp. 2d at 1088-89 (finding procedure prong satisfied based on debt collector's unrebutted evidence that it maintained both general and specific procedures); Taylor v. Luper, Sheriff, & Niedenthal Co., L.P.A., 74 F. Supp. 2d 761, 766-67 (S.D. Ohio 1999) (granting summary judgment to the debt collector based, in part, upon evidence of general and specific procedures).

We have noted that "it is more common to speak of procedures adapted to avoid clerical errors than to speak of procedures adopted to avoid mistakes of law." See Johnson II, 305 F.3d at 1123. Furthermore, as only "a growing minority of courts" are finding that mistakes of law can also be bona fide errors under § 1692k(c), see id. at 1121, most case law addressing the procedures prong of the bona fide error defense concerns clerical or factual errors. But see, e.g.,

Kort, 394 F.3d at 538 (legal error); Jenkins, 124 F.3d at 834 (same); Frye, 193 F.

Supp. 2d at 1088-89 (same); Taylor, 74 F. Supp. 2d at 766 (same); Aronson v.

Commercial Fin. Servs., Inc., No. Civ. A 96-2113, 1997 WL 1038818, at *5

(W.D. Pa. Dec. 22, 1997) (unpublished) (same), aff'd without opinion, 162 F.3d

1150 (3d Cir. 1998).

Cases applying the procedures prong to a clerical error are not particularly

helpful to our review of a situation where, as here, the error was the result of a

core legal decision. Procedures which may be reasonably adapted to avoiding a

clerical error—e.g., sending employees and staff to training seminars or

subjecting employees and staff to compliance testing—cannot shield an attorney

from liability for legal errors because such clerical procedures are mostly about

the mechanics for collecting debts. Furthermore, only Riddle, as the attorney in

charge, rather than his staff or employees, may make a core legal decision as to

whether a particular practice is permitted by law. Thus, in order for his mistake

to have been bona fide, Riddle himself must have employed procedures to avoid

committing an error, and those procedures must have been reasonably adapted to

avoiding the core legal error that occurred.

In this case, Riddle attempted to employ two procedures to avoid his legal

error. First, in his opinion letter to his client, he researched relevant statutes and

case law to determine whether Utah permitted the practice of claiming shoplifting

penalties for a dishonored check. Second, he filed what he believed was a test case. While we agree that such procedures are conceivably sufficient to satisfy the bona fide error requirement, we conclude that triable issues of fact exist in this case regarding whether Riddle's implementation of these procedures was adequate.

Riddle's opinion letter regarding the propriety of filing a suit to collect shoplifting penalties for dishonored checks suggests that he read the relevant Utah statutes, and researched Utah and other states' case law but found that none existed. However, rather than predicting how the Utah Supreme Court would decide the issue, Riddle merely included a disclaimer in the letter that "[i]t would be difficult for our firm to predict the outcome of this case" and noted that whether the practice was ultimately permitted by law would "depend on the courts [sic] interpretation of [the shoplifting] statute." A reasonable jury could find that such limited analysis does not entitle Riddle to the bona fide error defense.[4] On the other hand, a reasonable jury could also find that the letter represents a

---

[4] Had Riddle conducted an Erie analysis to predict how the Utah Supreme Court would decide the issue, rather than merely including a disclaimer in his opinion letter, he likely would have come to the same "unmistakably clear" and "unambiguous" conclusion we reached in undertaking such an analysis in our prior review in this case: Utah law does not permit a debt collector to claim shoplifting penalties for an ordinary dishonored check. See Johnson II, 305 F.2d at 1119-20. However, conducting an Erie analysis might not represent the only due diligence capable of rendering a mistake of law objectively reasonable; we leave that determination for the jury.

- 16 -

reasonable, albeit erroneous, determination by a lawyer, with national and local expertise in collecting debts, that the practice of collecting shoplifting penalties was defensible under the law.

Riddle claims that his filing of a test case is further evidence that he maintained procedures to avoid his legal error in this case, rendering his legal error bona fide. The district court stated that the "filing of a 'test case' to determine the parameters of state law is a quintessential example of a procedure reasonably adapted to avoid error—in the context of this case, it was specifically designed to avoid legal error under the FDCPA." Johnson III, 296 F.3d at 1294. But again, although we agree that filing a test case potentially represents a sufficient procedure, we conclude that a reasonable jury could find that Riddle did not actually "maintain," that is, utilize, such a procedure in this case. Riddle's alleged "test case" resulted only in one unpublished, default judgment issued by a first-instance trial court after an ex parte hearing. Furthermore, we do not know whether the facts of Riddle's test case mirror the facts of Riddle's suit against debtors such as Johnson.[5] Accordingly, the test case may or may not have tested whether Utah law permitted shoplifting penalties for ordinary dishonored checks

---

[5] In support of her argument on appeal, Johnson included the complaint filed in Riddle's test case. Because the complaint was not submitted to the district court as part of summary judgment briefing or supporting documentation, we will not review on it on appeal. See Aero-Med., Inc. v. United States, 23 F.3d 328, 329 n.2 (10th Cir. 1994).

because we cannot determine on the summary judgment record whether there were significant factual differences between the test case and Riddle's ensuing claims against Johnson and others. Riddle's test case therefore could be determined by a jury to be either a sham to set up the bona fide error defense or a true judicial scrutiny of unsettled practices.

In short, the record reflects genuine issues of material fact regarding whether Riddle is entitled to the bona fide error defense. Weighing in favor of Riddle is the fact that Riddle's firm specializes in collections work; he researched relevant statutes and case law to determine whether a debt collector could seek shoplifting damages for a dishonored check; he filed a test case to test such a practice; and he received a default judgment awarding shoplifting penalties. Additionally, two other state court cases allowed statutory penalties in excess of $15, and no "state judge ever told [Riddle] to stop . . . filing such lawsuits." Johnson III, 296 F. Supp. 2d at 1289 (quotation omitted). A jury could reasonably conclude that this combination of factors means that Riddle is entitled to the bona fide error defense.

On the other hand, Riddle did not attempt to actually predict whether the Utah Supreme Court would permit the practice of collecting shoplifting penalties for a dishonored check, and he included a disclaimer in his opinion letter admitting that one could certainly argue the practice was prohibited. His test case

resulted only in an unpublished, default judgment on facts that may or may not be fairly representative of Riddle's later shoplifting claims. Additionally, the default judgment was issued by a trial court that was itself divided on the issue: Judge Burton, the judge who originally issued a default judgment awarding Riddle shoplifting penalties for a dishonored check, was uncertain whether he would continue to allow such a practice, and Judge Fratto decidedly disallowed the practice. After learning of the state court's concern regarding the practice of collecting more than $15 for a dishonored check, Riddle expressed reluctance toward continuing to seek such penalties and yet filed suit against Johnson seeking shoplifting penalties. Additionally, although it is not necessary in every case, before suing Johnson, Riddle did not seek guidance from an independent third party, who might not have had the same self-interest as Riddle to collect the higher statutory penalty.[6] A reasonable jury relying on this combination of factors could conclude that Riddle is *not* entitled to the bona fide error defense.

## C. Conclusion

On the record, it is a very close question regarding whether the bona fide legal error defense shields Riddle from liability for attempting to collect an amount not permitted by Utah law in violation of the FDCPA. We conclude that

---

[6] Riddle collected on 700,000 to 1.5 million checks per year and therefore had a strong self-interest in collecting the higher shoplifting penalty rather than the $15 bad-check penalty for each check.

triable issues of fact exist regarding each prong of the defense, although the issue of whether Riddle maintained procedures reasonably adapted to avoid his legal error may be determinative of Riddle's subjective and objective intent. Accordingly, summary judgment is not proper for either party on this issue. The jury should decide whether the bona fide error defense shields Riddle from liability for violating the FDCPA.

## III. CLASS CERTIFICATION

Having granted summary judgment in favor of Riddle, the district court denied Johnson's motion for class certification as moot. Johnson III, 296 F. Supp. 2d at 1294. Because we instead conclude that a jury should decide whether Riddle is entitled to the defense, we reverse the district court's class certification decision.

## IV. STATE LAW CLAIMS

After dismissing Johnson's federal claim, the district court declined to exercise supplemental jurisdiction over her remaining state law claims under 28 U.S.C. § 1367(c)(3). Because we conclude that summary judgment in favor of Riddle was erroneous, we reverse this decision as well.

## V. CONCLUSION

For the foregoing reasons, we REVERSE the district court order granting summary judgment in favor of Riddle, AFFIRM the judgment of the district court denying summary judgment in favor of Johnson, and REMAND for further proceedings consistent with this opinion.