943 F.2d 58
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Dianne LEWIS, Defendant-Appellant.
 No. 90-4066.
 United States Court of Appeals, Tenth Circuit.
 Sept. 5, 1991.
 
 Before LOGAN and BRORBY, Circuit Judges, and BRIMMER,* Chief District Judge.
 ORDER AND JUDGMENT**
 BRORBY, Circuit Judge.
 
 
 1
 Dianne Lewis (Lewis or Appellant) appeals her conviction for three counts of false statement to a bank, two counts of bankruptcy fraud, and three counts of perjury. She also appeals one aspect of her sentence on the false statement and bankruptcy fraud charges. We affirm.
 
 Background
 
 2
 Lewis was indicted under eight counts of a nine-count federal indictment that charged her and her husband with various acts of fraud and dishonesty. Counts I-III charged Lewis with lying to three federally insured financial institutions in violation of 18 U.S.C. § 1014. The false statements were made within days of her husband's declaration of bankruptcy, when Lewis used false income information, a false name, and her daughter's social security number to secure loans which she used to purchase and furnish a house. Count IV charged Lewis with concealing assets from her husband's trustee and creditors in bankruptcy in violation of 18 U.S.C. §§ 152 and 2. That charge stemmed from Lewis's plundering of the physical assets of her failed business venture, including building fixtures, office equipment, electronic equipment, household appliances, and video tapes, before the business's creditors could secure their collateral. Count V charged Lewis with fraudulently transferring certain accounts receivable (customer sales contracts from the failed business) with intent to defeat the bankruptcy code, also in violation of 18 U.S.C. §§ 152 and 2. Finally, Counts VII-IX charged Lewis with lying under oath on three separate occasions before proceedings of a bankruptcy court, in violation of 18 U.S.C. § 1623. After a six-day jury trial, Lewis was found guilty on all counts.
 
 
 3
 Lewis was sentenced by the district court on April 6, 1990. The bankruptcy fraud for which Lewis was convicted under Count V occurred before November 1, 1987, the effective date of the United States Sentencing Guidelines (U.S.S.G.). Lewis was sentenced on that count to a five year term under pre-guidelines law. Appellant does not challenge that aspect of her sentence.
 
 
 4
 Lewis was sentenced under the sentencing guidelines for the remaining false statement, bankruptcy fraud, and perjury charges. A comprehensive Presentence Report was prepared by the United States Probation Officer. With respect to the false statement offenses and the Count IV bankruptcy fraud offense, the report determined a base offense level of six under U.S.S.G. § 2F1.1.[1] The report recommended upward adjustment of the offense level for the following specific offense characteristics: more than minimal planning, two levels; obstruction of justice, two levels; adjustment for role in the offense, two levels. Appellant does not challenge those adjustments.
 
 
 5
 The presentence report also calculated the applicable adjustment for loss under U.S.S.G. § 2F1.1(b)(1). The elements of loss caused by Lewis's fraudulent acts include the value of the fraudulently induced loans as well as outstanding debt to the bankruptcy trustee. The report found the loss range for these offenses to be $500,001-$1,000,000, and recommended an upward adjustment of eight offense levels under § 2F1.1(b)(1)(I). The report calculated a total offense level of twenty; a criminal history category of I; and a guideline sentencing range of thirty-three to forty-one months.[2]
 
 
 6
 At the sentencing hearing, the district court adopted the presentence report subject to any objections presented. Lewis objected solely to the loss calculation, and argued the loss adjustment should be based on actual loss to the victims rather than the face value of the loans. The defense admitted the actual loss exceeded $200,000, but claimed it was less than $500,000, so that Lewis's total offense level would be nineteen, rather than twenty. The court rejected the argument and found the amount of loss is in the range of $500,001-$1,000,000. The court selected a sentence at the upper end of the guideline range, and imposed a sentence of forty-one months, to be followed by a three-year period of supervised release.
 
 Issues on Appeal
 
 7
 Appellant timely appealed, raising four issues. Appellant argues that: the district court erred in not excusing a particular juror for cause; the testimony of appellant's prior attorney violated the attorney-client privilege; trial counsel provided ineffective assistance; and the district court improperly included the entire value of the loan in calculating the guidelines sentence. We turn now to the merits.
 
 Juror Bias
 
 8
 Appellant first argues "[t]he lower court allowed a juror, who by her testimony and actions demonstrated clear bias toward individuals in Bankruptcy, to sit on the appellant's jury." Appellant identifies "a woman by the name of Lalonde" as the allegedly biased juror. However, Appellant failed to inform this court that Ms. Lalonde was not selected and did not sit on Appellant's jury.
 
 
 9
 The transcript unmistakably reveals that Ms. Lalonde was not among the fourteen jurors impaneled in this case. Notwithstanding that fact, Appellant's discussion of this issue in brief concludes that "[t]he panel which served as the jury for the appellant in this matter was composed of at least one individual whose actions and words indicated that she was biased and prejudiced against the appellant for reasons of her bankruptcy situation." Whether this misrepresentation was made intentionally or inadvertently, we consider it inexcusable.
 
 
 10
 Because the juror mentioned in Appellant's Brief did not even serve on Appellant's jury, this issue is frivolous. Appellant has not demonstrated any prejudice flowing from the district court's decision not to strike for cause a prospective juror who did not serve on Appellant's jury. We note Appellant did not even challenge Juror Lalonde. We thus find no error in the district court's exercise of its discretion. United States v. Porth, 426 F.2d 519, 523 (10th Cir.), cert. denied, 400 U.S. 824 (1970).
 
 Attorney Testimony
 
 11
 Appellant next argues the trial court allowed a prosecution witness to testify in violation of her attorney-client privilege. The witness was the attorney who represented Lewis at the time she gave perjurious testimony before a bankruptcy proceeding. Appellant claims the attorney's trial testimony violated the attorney-client privilege and prejudiced the Appellant by damaging her credibility. We disagree.
 
 
 12
 On direct examination during the defense phase of trial, Lewis was asked to explain her testimony before a bankruptcy proceeding.[3] During that proceeding Lewis denied, under oath, having purchased a house and claimed her daughter purchased it. When asked about that answer during trial, Lewis explained that her attorney at the time of the deposition, Steven Dougherty, told her the home legally belonged to her daughter. The prosecution subsequently called Mr. Dougherty as a rebuttal witness, and sought his explanation of the advice he gave Lewis at the bankruptcy deposition. Dougherty was unable to remember his specific discussions with Lewis, but said he told her to tell the truth at the deposition.[4] It is this ineffectual testimony that Appellant challenges on appeal.
 
 
 13
 The proponent of the attorney-client privilege bears the burden of establishing both that the communications at issue are privileged and that the privilege was not waived. United States v. Jones, 696 F.2d 1069, 1072 (4th Cir.1982); United States v. Bump, 605 F.2d 548, 551 (10th Cir.1979). "The attorney-client privilege is lost if the client discloses the substance of an otherwise privileged communication to a third party." United States v. Ryans, 903 F.2d 731, 741 n. 13 (10th Cir.) (citing Bump, 605 F.2d at 551 ("Even if the privilege exists it is waived when the client voluntarily reveals the information to another....")), cert. denied, 111 S.Ct. 152 (1990).
 
 
 14
 In this case, Appellant failed to establish the privileged nature of the communications she seeks to protect. Furthermore, even if the communications were privileged at one time, Lewis waived the privilege by disclosing the substance of the communications during her trial testimony. Ryans, 903 F.2d at 741 n. 13. During an in camera hearing about the admissibility of Mr. Dougherty's testimony, the trial judge held, with respect to "specific things that [Lewis] testified to that were in any sense accusatory of [Dougherty] or indicating that he gave her particular advice, that [Dougherty] can be asked whether he gave her the advice that she claims was given." We agree, and find no error in the district court's admission of Mr. Dougherty's rebuttal testimony.
 
 Ineffective Assistance
 
 15
 Appellant next argues her "trial counsel's conduct rose to a level of ineffective assistance of counsel." The conduct Appellant offers in support of this argument involves nothing besides trial counsel's tolerance of the two alleged errors discussed above, and his failure to object and preserve those two issues for appeal.
 
 The government simply responds:
 
 16
 Because Mrs. Lewis's contention that she was rendered ineffective assistance of trial counsel is based only on the notion that counsel simply sat idly by while the court committed error as outlined in her first two points on appeal, and since, for the reasons set forth above, the trial court did not err, this third contention must necessarily fail.
 
 
 17
 We agree. Because Lewis cannot plausibly argue that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," Strickland v. Washington, 466 U.S. 668, 687 (1984), we reject her contention that trial counsel was constitutionally ineffective.
 
 Guidelines Sentence
 
 18
 Finally, Appellant argues the district court erred by considering the entire value of the loan she fraudulently procured in calculating her guidelines sentence. Appellant argues we should remand this matter so the district court can determine the actual loss to the lending institution, apparently by subtracting the salvage value of the house from the face value of the loan.
 
 
 19
 Whether the district court correctly computed the loss attributable to Lewis's fraud depends on whether the full value of the loan, or just the actual loss to the lender, should be considered. This is a legal question, which we review de novo. United States v. Whitehead, 912 F.2d 448, 451 (10th Cir.1990).
 
 
 20
 Guidelines § 2F1.1(b)(1) directs the sentencing court to increase the offense level for a fraud-based crime "[i]f the loss exceeded $2,000." The Commentary to § 2F1.1 explains:
 
 
 21
 The amount of loss need not be precise. The court is not expected to identify each victim and the loss he suffered to arrive at an exact figure. The court need only make a reasonable estimate of the range of loss, given the available information.... The offender's gross gain from committing the fraud is an alternative estimate that ordinarily will understate the loss.
 
 
 22
 U.S.S.G. § 2F1.1, comment. (n. 8). The commentary also refers to the commentary to § 2B1.1, which states " 'Loss' means the value of the property taken, damaged, or destroyed." U.S.S.G. § 2B1.1, comment. (n. 2).
 
 
 23
 Appellant's presentence report explained the loss calculation in these terms:
 
 
 24
 The ICA Mortgage Corporation foreclosed on the home Mrs. Lewis purchased with the $495,000 loan. Once the home is sold the proceeds will go toward paying her loan. However, ICA will suffer a loss, but the amount of that loss has not been determined. Mrs. Lewis owes restitution to American First Credit and Trans West Credit Union in the amount of $5,000 and $15,000 respectively. Mrs. Lewis owes approximately $185,505 to the Bankruptcy Trustee in uncontested debt and there is another $240,284 in debt which is contested.
 
 
 25
 The report determined "[t]he loss range for this offense is $500,001-$1,000,000 and is found in Section 2F1.1(b)(1)(I)." After hearing testimony about the existence of substantial and unquantified materialmen's liens that significantly reduce the value of the house as collateral to the lender, the district court adopted the report's recommendation.
 
 
 26
 "[A] defendant's offense level should not turn on whether or not the banks recovered some of their potential loan losses." United States v. Johnson, 908 F.2d 396, 398 (8th Cir.1990). Rather, the sentencing court should focus on the amount of the possible loss which the defendant attempted to inflict. Id.; and see U.S.S.G. § 2F1.1, comment. (n. 7) ("if a probable or intended loss that the defendant was attempting to inflict can be determined, that figure would be used if it was larger than the actual loss").
 
 
 27
 We recently considered the meaning of the term "loss" in response to a similar argument. In United States v. Johnson, --- F.2d ----, ---- (No. 90-6235, 10th Cir., filed August 15, 1991, slip op. at 27), we rejected an argument that the value of recovered real estate should not be included in the loss caused by defendant's mail fraud and equity skimming. We stated "[t]he Government's reacquisition of the real estate through foreclosure does not change the fact that the Defendant took the real estate in the first place." Id. at 26. To the same effect, see United States v. Westmoreland, 911 F.2d 398, 399 (10th Cir.1990) ("that good police work diminished the actual loss to the employer victim should not affect the determination of the extent of defendant's culpability and responsibility for purposes of sentencing").
 
 
 28
 Likewise, the fortuity that the lender may be able to mitigate its actual loss through recourse to the house does not in any way reduce Lewis's culpability for fraudulently inducing a $495,000 loan. Appellant fraudulently borrowed and spent the full face value of the loan. She would not have received the loan but for her fraudulent acts. Combined with the other losses Appellant inflicted, the total loss figure is well within the $500,001-$1,000,000 range of § 2F1.1(b)(1)(I). We hold the district court did not err in considering the full face value of the loan in calculating loss under the guidelines.
 
 Conclusion
 
 29
 Finding no error, we AFFIRM Appellant's conviction and sentence.
 
 
 
 *
 The Honorable Clarence A. Brimmer, Chief Judge, United States District Court for the District of Wyoming, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 Guidelines § 2F1.1(b)(1) was amended, effective November 1, 1989, to make the loss calculation table consistent with that for tax evasion crimes. We apply the version in effect before the 1989 amendment. See U.S.S.G.App.C. 78-C.79 (1990)
 
 
 [2]
 With respect to the perjury counts, the presentence report calculated a total offense level of fifteen, which was less than the offense level calculated for the false statement and bankruptcy fraud counts. See U.S.S.G. § 3D1.4
 
 
 [3]
 The testimony at issue formed the basis of the perjury charge contained in indictment Count VII. During the bankruptcy deposition, Lewis was asked the following question: "Now, Mrs. Lewis, I believe you purchased 7544 South Pebblesprings Court last November, is that correct?" After a pause during which, the transcript indicates, "[t]here was an attorney-client discussion," Lewis answered, "No, I did not purchase the home, Elisha Dianne Lewis did." Appellant has a daughter named Elisha Dianne Parker; she was eight years old at the time of the deposition. Elisha Dianne Lewis is apparently a fictitious name
 
 
 [4]
 When the trial questioning finally focused on the substance of the attorney-client discussion which took place during the deposition, Mr. Dougherty stated "I can't remember the exact substance of what I said, and I can't remember if at that time I told her to tell the truth. But I do remember telling her to tell the truth, and it could have been that time, yes."