Elsa ANCHONDO, on behalf of herself
and all others similarly situated,
Plaintiff,

v.

ANDERSON, CRENSHAW, &
ASSOCIATES, L.L.C.,
Defendant.

No. CV 08–0202 RB/WPL.

United States District Court,
D. New Mexico.

March 16, 2009.

O. Randolph Bragg, Horwitz, Horwitz & Associates, Chicago, IL, Rob Treinen, Feferman & Warren, Albuquerque, NM, for Plaintiff.

Douglas G. Schneebeck, Modrall Sperling Roehl Harris & Sisk PA, Albuquerque, NM, Steven Richard Dunn, Dunn Law Firm, Dallas, TX, for Defendant.

## ORDER

WILLIAM P. LYNCH, United States Magistrate Judge.

Elsa Anchondo brought this putative class action against Anderson, Crenshaw, & Associates (ACA). She alleges that, in an effort to collect her disputed debt to APX Alarm Security Solutions, ACA left two prerecorded messages on her home voicemail system that violate the Fair Debt Collection Practices Act (FDCPA) in that they did not identify ACA or state that they were attempts to collect the debt.[1] Anchondo seeks statutory damages for herself and all persons with New Mexico telephone numbers who owed a debt to APX Alarm and for whom ACA left a voicemail message in which it committed these same FDCPA violations between February 26, 2007 and the date of class certification.

---

**1.** A debt collector violates the FDCPA by failing to disclose in the initial communication with a debtor "that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and [by failing] to disclose in subsequent communications that the communication is from a debt collector...." 15 U.S.C. § 1692e(11). A debt collector also violates the FDCPA by placing telephone calls to the debtor "without meaningful disclosure of the caller's identity." *Id.* § 1692d(6).

The matter is before me now on Anchondo's motion to compel responses to her first set of discovery. She requests that ACA be compelled to respond to interrogatories 6, 9, 16, 18, and 21, and to requests for production 1 through 14 and 18 through 23. For the reasons stated below, I will grant the motion in part and deny it in part.

### Discovery No Longer in Dispute

In its response to the motion to compel, ACA states that because an agreed protective order has now been entered, it has no objection to producing documents responsive to requests for production 1, 2, 4, 5, 6, 7, 8, 11, 12, and 13. The agreed protective order was filed on February 2, 2009. (Doc. 49.) ACA's response was filed on February 13, 2009. (Doc. 51.) In her reply, filed on February 19, 2009, Anchondo claims that ACA has not produced any of the documents. (Doc. 57.) To the extent that any documents responsive to these requests still have not been produced, ACA must produce them within ten days of the date this order is filed.

Interrogatory 6 asks ACA to provide a class list. In her reply, Anchondo agrees that ACA need not provide a class list unless and until the Court certifies the class. Accordingly, ACA is not required to answer interrogatory 6 at this time.

Interrogatory 16 asks ACA to detail the procedures it maintains to avoid the FDCPA violations alleged in the complaint. In its response to the motion to compel, ACA states that this interrogatory is not in dispute because "[w]ith the signing of the Agreed Protective Order, the business records from which the answer to this interrogatory can be obtained will have been produced...." (Doc. 52 at 6.) In her reply, Anchondo does not object to the answer being provided in this way. *See* FED.R.CIV.P. 33(d). She asserts, however, that ACA has not produced the documents. To the extent that these documents still have not been produced, ACA must produce them within ten days of the date this order is filed.

### Discovery Regarding Affirmative Defenses

Interrogatory 21 asks ACA to "[s]tate all facts," to "identify every witness," and to "describe each document" upon which it will rely to support its affirmative defenses.

ACA has asserted the following as affirmative defenses: Anchondo has not stated a claim upon which relief can be granted; any violation of the FDCPA by ACA was a bona fide error; Anchondo has not suffered any damages; Anchondo is not an adequate class representative; ACA has rights of setoff or recoupment; ACA is not liable for actions of its agents or employees committed outside the scope of their employment; ACA breached no legal duty to Anchondo; and Anchondo's claims are groundless and brought in bad faith.

ACA did not object to interrogatory 21. It answered the interrogatory as follows:

Defendant believes that it is in full compliance with all applicable laws and as stated in its answer, Defendant is not liable for any actions of its agents or employees committed outside of the line and scope of their employment. Defendant has not yet determined who will be called as witnesses, but will timely supplement this information. Defendant [sic] has not plead for actual damages and does not believe Plaintiff sustained any actual damages. Defendant's bona fide error defense is applicable in this case since it has policies and procedure [sic] in place designed to prevent the alleged error asserted by Plaintiff. Defendant does not believe it violated the FDCPA in its voicemail messages since Plaintiff had actual knowledge of the purpose of the telephone call and the mini-Miranda had been given in a prior correspondence to Plaintiff. Defendant does not believe Plaintiff to be an adequate class representative since she sustained no damages, Defendant did not violate the FDCPA in its communications with Plaintiff, and Plaintiff lacks standing to prosecute the class action suit since a Rule 68 Offer of Judgment was made for the maximum amount of damages and attorney's fees Plaintiff could recover under the FDCPA was made [sic] by Defendant and not accepted by Plaintiff.

Anchondo has submitted letters exchanged by counsel in an attempt to resolve their discovery disputes. (Doc. 48 Ex. B, C.) In one of those letters, ACA's attorney stated that it would withdraw the defenses related

to scope of employment and setoff. In its response to the motion to compel, however, ACA does not mention scope of employment, but claims, "Regarding set off, Defendant stated that it was dropping said defense." (Doc. 52 at 10.) The response then states, "Plaintiff's counsel responded that it [sic] was going to proceed in any event unless Defendant immediately filed an amended pleading withdrawing said defense. The deadline to amend pleadings has passed and this issue could have been handled by written agreement between counsel." (*Id.*) ACA further argues that its answer to interrogatory 21 is sufficient because "[w]ith the entry of the Agreed Protective Order, Defendant's policies and procedures are being produced, as well as information regarding the service used to place the voicemail message." (*Id.* at 9.) ACA does not identify any formal action it has taken to withdraw the setoff defense, and it is unclear from the language quoted above whether ACA is now arguing that its offer to withdraw the defense has expired. Moreover, it is puzzling that ACA agreed in its letter to withdraw the scope of employment defense, but nevertheless included a response regarding that defense in its answer to interrogatory 21 and does not mention the withdrawal of this defense in its response to the motion to compel. The response does not identify the defense to which "information regarding the service used to place the voicemail message" applies; it is possible that ACA believes this information addresses the scope of employment defense. Because the status of the setoff and scope of employment defenses is unclear, I will assume for purposes of ruling on Anchondo's motion that ACA still intends to assert these defenses.

■ ACA's answer to interrogatory 21 does not address setoff, nor does it address ACA's claim that Anchondo's suit is groundless and was brought in bad faith. Because ACA did not make a timely objection to interrogatory 21, any objections to the interrogatory are waived. *See* FED.R.CIV.P. 33(b)(2), (4); *Lucero v. Valdez,* 240 F.R.D. 591, 593 (D.N.M.2007). ACA must therefore answer interrogatory 21 with regard to these defenses.

■ Anchondo argues that ACA's answer does not adequately address the defenses of scope of employment and bona fide error. I

agree. With regard to the scope of employment defense, ACA's answer to the interrogatory is merely a verbatim reiteration of the language used in ACA's answer to the complaint. This is insufficient. *See Stabilus, A Div. of Fichtel & Sachs Indus. v. Haynsworth, Baldwin, Johnson & Greaves, P.A.,* 144 F.R.D. 258, 264 (E.D.Pa.1992).

■ With regard to the bona fide error defense, ACA's answer to the interrogatory is merely a recitation of one of the elements of the defense. *See* 15 U.S.C. § 1692k(c) ("A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."); *Johnson v. Riddle,* 443 F.3d 723, 727–28 (10th Cir.2006) ("[A]n FDCPA defendant seeking the protection of the bona fide error defense carries the burden of proving that the violation was 1) unintentional, 2) a bona fide error, and 3) made despite the maintenance of procedures reasonably adapted to avoid the error."). This too is insufficient. *See Williams v. Johanns,* 235 F.R.D. 116, 123 (D.D.C.2006).

In its response to the motion to compel, ACA states that its policies and procedures "are being produced" pursuant to the agreed protective order and that "caselaw supporting Defendant's position has been set forth in its Motion to Dismiss...." (Doc. 52 at 9.) ACA further argues that its bona fide error is "self-evident" and the person who made the error was identified in another interrogatory. (*Id.*) It may be permissible for ACA to address the third element of the bona fide error defense by producing its policies and procedures, but there is no indication that it has yet done so. *See* FED.R.CIV.P. 33(d). *But see Lucero,* 240 F.R.D. at 595 ("Simply referring a party to a mass of records, or offering to make a party's records generally available, is not a sufficient response."). ACA's motion to dismiss did not directly address the bona fide error defense. Even if it did, ACA's answer to the interrogatory did not incorporate the motion, nor would it have been proper to do so. *See Stabilus,* 144

F.R.D. at 263; *Cont'l Ill. Nat'l Bank & Trust Co. v. Caton,* 136 F.R.D. 682, 686 (D.Kan. 1991); *Pilling v. Gen. Motors Corp.,* 45 F.R.D. 366, 369 (D.Utah 1968). And if ACA intended for the answer to another interrogatory to serve as an answer to this one, it should have specifically referred to the other answer. *See Pilling,* 45 F.R.D. at 369.

ACA must supplement its response to interrogatory 21 within ten days of the date this order is filed.

### Discovery Regarding Other Creditors

■ Interrogatory 9 asks ACA to identify "every creditor that originated the alleged debts with which ACA, or a service hired by ACA, left the voicemail message" during the class period and to state for each creditor the number of people with New Mexico phone numbers who received the message during that period. Anchondo states that the purpose of this interrogatory is to obtain "contact information for the creditors from whom ACA obtained the right to collect, where The Voicemail Message was utilized." (Doc. 48 at 14.) In its response to the motion to compel, ACA contends that because the putative class is limited to debtors of APX Alarm, information regarding other creditors is not relevant. Anchondo counters that this information is relevant to commonality and typicality, the scope of employment defense, and the bona fide error defense. Regarding the bona fide error defense, Anchondo argues that the answer to interrogatory 9 "would likely show that ACA employs a well defined mechanical process for the leaving of the voicemail message, controlled entirely by ACA, without regard to the creditor whose accounts are at issue, and without individual variation or decision making input from any of the creditors." (*Id.* at 15.)[2]

It is difficult to see how contact information for other creditors is relevant. As ACA notes, the putative class is limited to debtors of APX Alarm. Anchondo does not explain how information regarding creditors other than APX Alarm will help her establish that her claims are typical and share common questions of law or fact with debtors of APX Alarm. Nor does the information appear relevant to the bona fide error and scope of employment defenses. Anchondo asserts throughout her motion to compel that ACA's bona fide error defense must be based on an error of law that caused it to believe that the voicemail message complied with the FDCPA. *See Johnson,* 443 F.3d at 730 (distinguishing legal errors from clerical errors, which typically involve the "mechanics" of collecting debts). Moreover, ACA revealed in an answer to another interrogatory that its CEO created and approved the voicemail message. Since ACA's CEO, not another employee or agent, created the message, and the error, if any, was in believing that the message complied with the FDCPA, the revelation that ACA employed a well-defined mechanical process for leaving the message on behalf of other creditors would not be relevant to ACA's defenses.

### Discovery Regarding the Voicemail Message

Request for production 3 seeks "[a]ll documents concerning the Voicemail Message," including: a) all documents concerning its creation, editing, approval, or authorization; b) all documents "concerning any activity" that resulted in the messages that were left for Anchondo; and c) "all documents pertaining to each account" for which ACA left the message at a New Mexico phone number during the class period.

In its objection to this request, ACA asserted that the request seeks confidential and proprietary information and would require the disclosure of information concerning other debtors in violation of the FDCPA. In response to the motion to compel, ACA states that it "has no objection to producing documents pertaining to the creation of the voicemail message." (Doc. 52 at 12.) However, ACA argues that the request "is too broad" because it seeks information regarding accounts other than APX Alarm. (*Id.* at 11.) ACA also asserts that courts ordinarily

---

**2.** In a letter to ACA's attorney attempting to resolve the discovery dispute, Anchondo's attorney mentioned that the information is relevant to commonality and typicality and the bona fide error defense, but emphasized that the information would allow Anchondo to subpoena the other creditors and to depose their representatives, so that she could establish numerosity and assemble a class list. (Doc. 48 Ex. B at 3.)

refuse to allow discovery of class members' identities at the pre-certification stage because plaintiffs' attorneys might use the information to identify potential new clients rather than to establish that certification is appropriate. Finally, ACA argues that because the FDCPA is a strict liability statute, providing the information could render it liable under 15 U.S.C. § 1692c(b) for improper third-party disclosure. This final argument is the only argument against disclosure that ACA made in both its objections and in its response. Therefore, it is the only argument properly before me. *See Cardenas v. Dorel Juvenile Group, Inc.,* 232 F.R.D. 377, 380 n. 15 (D.Kan.2005) ("When ruling upon a motion to compel, the Court will consider only those objections that have been (1) timely asserted, *and* (2) relied up[on] in response to the motion to compel.").

Pursuant to § 1692c(b), a debt collector generally "may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector."

■ As I interpret ACA's response, it no longer objects to producing documents in response to request 3(a). In any event, ACA offers no reason to believe that its production of documents concerning the creation, editing, approval, and authorization of the voicemail message would expose it to liability under § 1692c(b). Likewise, turning to request 3(b), ACA offers no reason to believe that producing documents related to the message left for Anchondo would expose it to this type of liability. Request 3(c) may implicate § 1692c(b), but the statute allows for disclosure with "the express permission of a court of competent jurisdiction." Anchondo has agreed to limit this request to the class parameters and not to contact any putative class members identified through this request before class certification without the Court's permission. (Doc. 57 at 8–9 nn. 7–8.)

Therefore, ACA shall produce documents responsive to request for production 3 within ten days of the date this order is filed. With respect to subpart 3(c), ACA may limit its response to the class parameters. ACA shall designate these documents as confidential and they shall be subject to the agreed protective order. I will consider a request to seal or redact any of the documents. Anchondo's counsel shall not contact any putative class members identified in the documents before class certification without the Court's permission.

### Discovery Regarding ACA's Relationship with APX Alarm

■ Request for production 9 seeks all documents that govern the relationship between ACA and APX Alarm. Request for production 10 seeks all documents that show the nature of ACA's interest in the account associated with Anchondo that was originated by APX Alarm. While counsel were attempting to resolve their discovery disputes, ACA's attorney stated that it would withdraw its scope of employment defense in response to request 9 and would withdraw its setoff defense in response to request 10. (Doc. 48 Ex. C at 3–4.) As noted above, however, ACA has not withdrawn either defense. In its response to the motion to compel, ACA does not mention withdrawal of these defenses. It argues, as it did in its objections, that the requests call for irrelevant documents.

These requests could lead to relevant information regarding ACA's defenses. Request 10 seeks information about Anchondo's own account with APX—the account that started the parties' original dispute. Moreover, Anchondo has submitted documents from the Texas Secretary of State's Office, indicating that ACA does business under the name "Alarm Debt Liquidation Group" and that ACA's CEO is also an officer of "Alarm Payment Processing PC," which does business as "Alarm Services and Products" and has the same address as ACA. (Doc. 48 Ex. G.) These documents raise a question as to the relationship between ACA and APX Alarm Security Solutions that could be answered by request 9. ACA shall respond to requests for production 9 and 10 within ten days of the date this order is filed.

### Discovery Regarding ACA's Net Worth

■ In a class action pursuant to the FDCPA, the class's recoverable damages are limited to the lesser of $500,000 or 1% of the

debt collector's net worth. 15 U.S.C. § 1692k(a)(2)(B)(ii). Accordingly, ACA's net worth is relevant. In response to interrogatory 23, ACA stated that it has "a zero net worth" based on a review of its tax return, "taking into account its book value, profits versus losses." Anchondo's requests for production 18 through 23 seek documents from which ACA's net worth can be substantiated.

Anchondo contends that ACA's answer to one of her interrogatories indicates that ACA is not always truthful. Interrogatory 20 asks ACA to identify "all other lawsuits" brought against it in the last five years, "in which the complaint alleged unlawful conduct or violations of the FDCPA concerning telephone messages left for the alleged debtor." Subject to its objections, ACA's response was "Defendant does not believe any other lawsuit has been brought involving alleged violations of the FDCPA concerning telephone messages." ACA identified its CEO as the person who answered the interrogatories. Steven R. Dunn is the attorney who responded to the motion to compel on behalf of ACA and also responded to the attempts by Anchondo's counsel to resolve the discovery disputes. He has the same address as ACA.

Anchondo claims that the answer to interrogatory 20 was not truthful because a suit was recently filed against ACA in New York, alleging a violation of the FDCPA concerning a telephone message. In the response to the motion to compel, Mr. Dunn does not dispute this claim or attempt to explain ACA's misstatement. Using the federal court's electronic case files system, I have obtained a copy of the complaint in the case cited by Anchondo. *See Binford v. United States*, 436 F.3d 1252, 1256 n. 7 (10th Cir.2006) (stating that a court is permitted to take judicial notice of facts that are a matter of public record). The complaint alleges that, as in this case, ACA violated 15 U.S.C. § 1692e(11) by leaving a message for the plaintiffs without identifying itself as a debt collector. *Huntley v. Anderson, Crenshaw & Assocs.*, CV 07–5116 (E.D.N.Y. Dec. 7, 2007). Mr. Dunn appeared on behalf of ACA in that case as well.

I agree with Anchondo that the unexplained misstatement in response to interrogatory 20 calls ACA's truthfulness into question. Combined with ACA's claim that its net worth is zero, the unexplained misstatement justifies discovery of information that would help Anchondo substantiate ACA's net worth.

ACA suggests that discovery regarding its net worth should wait until liability has been established. ACA did not object to requests 18 through 23 on this ground and thus waived it. In any event, a settlement conference is scheduled for April 2, 2009. (Doc. 40.) Anchondo points out that without information regarding ACA's net worth, her counsel would be unable to engage in meaningful negotiations.

Request for production 18 asks for the documents used in answering interrogatory 23. In its response to the motion to compel, ACA states, "To the extent that Defendant's net worth, as defined by the courts is relevant, Request No. 18, Defendant agrees to produce responsive documents subject to the Protective Order entered in this case for the time period in which Plaintiff's proposed class encompasses [sic]." (Doc. 52 at 17.) I interpret this as meaning that ACA is now willing to provide documents responsive to request 18.

Request 19 seeks documents showing ACA's net worth during the last three years, including tax returns, financial statements, annual reports, audits by accountants, and credit applications. Although this request goes beyond the class period, it is not a "fishing expedition" as argued by ACA, because it may lead to the discovery of admissible evidence regarding ACA's current net worth. ACA also asserts that this request is designed to harass. Beyond making the assertion, however, ACA does not attempt to explain how the request is harassing.

Request 22 seeks documents showing the valuation of ACA's capital stock and goodwill within the last five years. ACA believes that this information is irrelevant because net worth under the FDCPA is determined by a balance sheet or book value, which does not encompass goodwill. For this proposition, ACA cites, among other cases, *Sanders v. Jackson*, 209 F.3d 998, 1004 (7th Cir. 2000). Anchondo counters with a district court case, which held that net worth includes capital stock and goodwill. *See*

*Wisneski v. Nationwide Collections,* 227 F.R.D. 259, 261 (E.D.Pa.2004). Neither party has cited a case on this issue from the Tenth Circuit, and I have not found one. The presiding judge will ultimately decide how to calculate net worth and whether any documents produced in response to this request are admissible. For now, it is sufficient that the documents may lead to the discovery of admissible evidence. Importantly, request 22 does not require ACA to obtain a valuation of goodwill if none exists; it only requires ACA to produce any documents already in existence that include the valuation. *Cf. Sanders,* 209 F.3d at 1003 (holding that one reason for excluding goodwill is to avoid a "mini trial" on statutory damages because goodwill is difficult to quantify). With this understanding, ACA must produce any documents that are responsive to the request.

█ Request 20 asks for documents that show ACA's ownership, corporate board members, corporate officers, and corporate structure in the last five years. Request 21 seeks documents showing the compensation paid by ACA to its board members and officers in the last five years. Request 23 asks for documents governing the relationship between the entity that answered Anchondo's complaint and all other entities operating under a trade name organized by ACA. Anchondo contends that these documents will help her determine whether ACA hides its net worth by transferring assets to alter ego companies or through extravagant compensation. She points out that ACA operates under at least five different trade names and that its CEO is a director of numerous other business entities that have the same address as ACA. However, Anchondo's complaint does not include any claim based on theories of alter ego or piercing the corporate veil. I therefore conclude that requests 20, 21, and 23 do not seek relevant documents.

ACA shall respond to requests 18, 19, and 22 within ten days after the date this order is filed. ACA may designate documents produced in response to these requests as confidential in accordance with the agreed protective order.

### Discovery Regarding Legal Research

Interrogatory 18 asks ACA to describe all its legal research concerning whether telephone messages left for debtors comply with the FDCPA and to identify the attorneys involved in the research. Request for production 14 asks for documents concerning the legal research. ACA objects to this discovery, citing the attorney-client privilege and the work-product doctrine. Anchondo replies that ACA waived the attorney-client privilege and the work-product doctrine by raising a bona fide error defense, which necessarily places the legal research at issue in this case.

### Attorney–Client Privilege

"[T]here is some authority that attorney-client communications cannot be used both as a sword and a shield, as when a party defends the conduct which is the subject of the suit by relying on advice of counsel." *Motley v. Marathon Oil Co.,* 71 F.3d 1547, 1552 (10th Cir.1995) (footnote omitted). Accordingly, courts have held that a party may waive the attorney-client privilege by placing information protected by the privilege in issue through some affirmative act for the party's own benefit. *E.g., Hearn v. Rhay,* 68 F.R.D. 574, 581 (E.D.Wash.1975).

The Tenth Circuit has noted that there are three approaches for determining whether a litigant has waived the attorney-client privilege. *See Frontier Refining Inc. v. Gorman–Rupp Co.,* 136 F.3d 695, 699 (10th Cir. 1998). Anchondo argues that ACA waived the privilege under the intermediate approach, which was established by the Eastern District of Washington in *Hearn. See id.* at 699–700 (discussing *Hearn's* intermediate approach). The approach articulated in *Hearn* has three elements: "(1) assertion of the privilege was a result of some affirmative act, such as filing suit by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense." *Hearn,* 68 F.R.D. at 581.

Anchondo incorrectly asserts that the Tenth Circuit adopted the *Hearn* approach in

*Frontier Refining.* *Frontier Refining* was a diversity case in which Wyoming law governed the privilege issue. *See* 136 F.3d at 699. The circuit found it unnecessary to decide whether Wyoming would adopt the *Hearn* approach because even if that approach applied, there was no waiver. *Id.* at 701. More importantly, because *Frontier Refining* was a diversity case, the circuit had no cause to consider whether *Hearn* should apply in cases governed by federal law. *See* FED.R.EVID. 501 (stating that privileges are governed by federal common law in non-diversity cases).[3] Anchondo has not cited, and I have not found, a federal-question case in which the Tenth Circuit applied *Hearn.* *See Apsley v. Boeing Co.,* No. 05–1368–MLB, 2008 WL 5211001, at *2 (D.Kan. Dec. 9, 2008) (noting that the circuit has not yet enunciated a test).

The *Hearn* approach has been described as the majority view. *E.g., Pub. Serv. Co. v. Lyons,* 129 N.M. 487, 10 P.3d 166, 172 (2000). But it has been heavily criticized by courts and commentators. The New Mexico Court of Appeals noted that the academic criticism of *Hearn* boils down to two faults: the unfairness it targets is not distinguishable from the unavoidable unfairness generated by every assertion of privilege, and its application is unlimited. *See id.* at 172 (quoting *Developments in the Law—Privileged Communications,* 98 HARV. L.REV. 1450, 1639–43 (1985)).

The judicial criticism of *Hearn* was articulated most forcefully in *Rhone–Poulenc Rorer Inc. v. Home Indem. Co.,* 32 F.3d 851 (3d Cir.1994). The court stated:

Some decisions have extended the finding of a waiver of the privilege to cases in which the client's state of mind may be in issue in the litigation. These courts have allowed the opposing party discovery of confidential attorney client communications in order to test the client's contentions.

These decisions are of dubious validity. While the opinions dress up their analysis with a checklist of factors, they appear to rest on a conclusion that the information sought is relevant and should in fairness be disclosed. Relevance is not the standard for determining whether or not evidence should be protected from disclosure as privileged, and that remains the case even if one might conclude the facts to be disclosed are vital, highly probative, directly relevant or even go to the heart of an issue.

32 F.3d at 864 (internal citations omitted). As an alternative to the *Hearn* approach, *Rhone–Poulenc* recognized a waiver when "the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney client communication." *Id.* at 863.

A federal district court in Iowa recently summarized the pros and cons of *Hearn* and *Rhone–Poulenc* and decided to follow *Hearn,* while noting that neither approach was "entirely sufficient." *See Union County v. Piper Jaffray & Co.,* 248 F.R.D. 217, 220–22 (S.D.Iowa 2008). The court stated that

the *Rhone–Poulenc* test draws a bright-line rule that leaves no room for or consideration of fairness or equity, thus potentially facilitating abuse of the privilege it seeks to protect. The *Hearn* test, on the other hand, recognizes the importance of the attorney-client relationship, but permits a balancing of that interest against the interests of fundamental fairness. While critics of the *Hearn* approach argue that it is, for all practical purposes, a slippery slope, over three decades of case law make clear that such concerns are without substantial foundation.

*Id.* at 222.

The Tenth Circuit's interpretation of *Hearn's* third element alleviates some of the

---

**3.** Here, Anchondo's complaint asserts a supplemental claim under the New Mexico Unfair Practices Act, but ACA's bona fide error defense only applies to the FDCPA claim. The Tenth Circuit has stated that when federal and state claims are raised and the privilege is upheld by one body of law and denied by the other, "an analytical solution must be worked out...." *Sprague v. Thorn Americas, Inc.,* 129 F.3d 1355, 1369 (10th Cir. 1997). The parties have not focused on the dis-

tinction between state and federal privilege law. They have cited only federal law. ACA does not even address the waiver issue; it merely cites black-letter law regarding the importance of the attorney-client privilege. Because the parties rely solely on federal law and the bona fide error defense arises under federal law, I will apply federal common law. *But see Pub. Serv. Co. v. Lyons,* 129 N.M. 487, 10 P.3d 166, 173–74 (2000) (declining to follow *Hearn* ).

concern that *Hearn's* application is unlimited. In *Frontier Refining,* the circuit stated that the information sought must be "'vital,' which necessarily implies the information is available from no other source." 136 F.3d at 701. Based on this limitation and the Iowa court's reasoning, I conclude that *Hearn* provides the better approach. *Cf. Williams v. Sprint/United Mgmt.,* 464 F.Supp.2d 1100, 1104 (D.Kan.2006) (opining, in an employment discrimination case, that the Tenth Circuit would adopt the *Hearn* approach "in light of its tendency to eschew bright-line rules in favor of more flexible, balancing tests" in those cases).

▇▇ Before applying *Hearn* to the facts of this case, one other question must be answered: Which party has the burden of proof? The party asserting a privilege has the burden of establishing its applicability. *Motley,* 71 F.3d at 1550. Generally, this burden encompasses the burden of establishing that the privilege was not waived. *See United States v. Lewis,* 943 F.2d 58, 1991 WL 172666, at *3 (10th Cir.1991) (citing *United States v. Jones,* 696 F.2d 1069, 1072 (4th Cir.1982)). In *Frontier Refining,* however, the Tenth Circuit seemed to place the burden of establishing the *Hearn* waiver on the party seeking to compel discovery—Gorman-Rupp. The court stated that "Gorman-Rupp failed to demonstrate its entitlement to the privileged materials under" *Hearn.* 136 F.3d at 701. The court cited no authority for placing the burden on the party seeking disclosure, but did not indicate that this result was dictated by Wyoming law. Based on *Frontier Refining,* I will assume that Anchondo bears the burden of showing that the privilege was waived.

The exact nature of ACA's bona fide error defense remains nebulous. In its answer to the complaint, ACA simply asserted that any liability for violating the FDCPA "is barred by 15 U.S.C. § 1692k(c)," which is the statutory section that establishes the bona fide error defense. (Doc. 3 at 4.) ACA's portion of the Joint Status Report and Provisional Discovery Plan states that ACA "had policies and procedures in place pertaining to communications with debtors which such policies and procedures are designed to address all communications with debtors. Therefore, the bona fide error defense pertains." (Doc. 37 at 4.) As discussed above, ACA has so far refused to flesh out its bona fide error defense in response to Anchondo's discovery requests.

Anchondo contends that ACA's bona fide error defense must be based on a legal error. ACA has not disputed this contention.[4]

▇▇ Turning to the *Hearn* elements, ACA's assertion of the attorney-client privilege is the result of its affirmative act of raising a bona fide error defense based on a legal error. By raising this defense, ACA made the legal research both relevant and vital to the case. When the claimed bona fide error is legal in nature, the defendant must show that it "employed procedures to avoid committing an error, and those procedures must have been reasonably adapted to avoiding the core *legal* error that occurred." *Johnson,* 443 F.3d at 730. In the context of a legal error, "procedures to avoid committing an error" include legal research. *See id.* (considering whether a jury could find that the legal research conducted by an attorney was sufficient to establish the bona fide error defense). Moreover, "a violation is unintentional for purposes of the FDCPA's bona fide error defense if the debt collector can establish the lack of specific intent to violate the Act." *Id.* at 728. Anchondo could challenge ACA's denial of specific intent to violate the FDCPA by showing that ACA's research revealed legal authority indicating that the voicemail message violated the FDCPA. *See id.* at 729 ("[T]he extent to which Riddle should have objectively realized that his actions were in violation of law may be inferentially probative of the subjective intentional nature of that violation."). There is no other

---

4. ACA's response to the motion to compel supports Anchondo's contention that ACA is relying on an error of law. In addressing the legal research issue, ACA argues that Anchondo's discovery requests are "not narrowly focused on the issue of bona fide error" and that although she cites cases supporting her position, she "ignores the holdings ... addressing ... whether a voicemail message constitutes a 'communication,' ... [and] holding that messages left on answering machines which were overheard by family members and other third parties, to obtain payments from alleged indebted consumers violated the FDCPA...." (Doc. 52 at 8 (citations omitted).)

source for this information. Accordingly, I conclude that the attorney-client privilege is waived as to the information sought by interrogatory 18 and request for production 14.

### Work–Product Doctrine

Rule 26(b)(3) of the Federal Rules of Civil Procedure prevents discovery of an attorney's fact work product "unless (1) the discovering party can demonstrate substantial need for the material and (2) the discovering party is unable to obtain the substantial equivalent of the material by other means without undue hardship." *Frontier Refining*, 136 F.3d at 704. This "substantial need/undue burden test" applies only to fact work product. *Id.* at 704 n. 12. "Some courts have held that opinion work product is absolutely protected; others have concluded it may be discovered under compelling circumstances." *Id.* The Tenth Circuit has not decided the issue. *See id.*

■ Materials prepared in anticipation of earlier litigation may be protected by the work-product doctrine in subsequent litigation. It is unclear whether the doctrine applies only to subsequent litigation that is closely related to the earlier litigation. *See id.* at 703.

■ The purpose of the work product doctrine is to protect an attorney's strategies and legal impressions. Accordingly, the doctrine "does not protect facts concerning the creation of work product or facts contained within work product." *Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir.1995).

■ A party asserting work-product protection has the burden of demonstrating that it applies. *Id.* "A mere allegation that the work product doctrine applies is insufficient." *Id.* The party also has the burden of showing that work-product protection has not been waived. *Anaya v. CBS Broad., Inc.*, No. CIV 06–476 JB/KBM, 2007 WL 2219394, at *5 (D.N.M. April 30, 2007). The party "cannot use the work product doctrine as both a sword and shield by selectively using the privileged documents to prove a point but then invoking the privilege to prevent an opponent from challenging the assertion." *Frontier Refining*, 136 F.3d at 704.

Anchondo's discovery requests regarding ACA's legal research are not limited by time. Thus, the requests encompass not only ACA's initial legal research leading up to creation of the voicemail message, but also any legal research related to earlier litigation and this litigation.

In its objection to interrogatory 18, ACA stated that the interrogatory "violates the attorney work product exemption from discovery by inquiring into action [sic] Defendant's attorney may have undertaken into the investigation of Plaintiff's claim." In its objection to request 14, ACA asserted that it "inquires into the attorney thought process." In its response to the motion to compel, ACA recites over a page of black-letter law regarding the work-product doctrine and then states that Anchondo "has not met her burden of proof establishing that she is unable to demonstrate a substantial need for the material and that she is unable to obtain the substantial equivalent without undue hardship." (Doc. 52 at 8.) To back up this assertion, ACA notes that Anchondo has not conducted any depositions. After discussing two cases that support its contention that it did not violate the FDCPA, ACA concludes by protesting that it "is not required to do Plaintiff's work for her by providing all contrary caselaw which does not support Plaintiff's position." (*Id.*)

As explained above, ACA must establish that the work-product doctrine applies before Anchondo is required to establish substantial need and undue hardship. With the exception of work related to this case, ACA has not established that the doctrine applies. ACA has not even asserted that any previous legal research was conducted in anticipation of litigation.

■ It seems that ACA is focused solely on legal research related to this litigation. Regarding that research, the work-product doctrine applies and ACA has not waived its protection by asserting the bona fide error defense. *See, e.g., Hearn*, 68 F.R.D. at 580 ("[M]aterial compiled by counsel in preparation for this lawsuit would be protected from discovery by the 'work product' doctrine, which exists independently of the attorney-client privilege."). Any legal

research conducted in anticipation of this suit would have at most marginal relevance to the bona fide error defense. For example, it would not provide any insight as to ACA's knowledge of the law at the time Anchondo received the voicemail message. Because of its marginal relevance, Anchondo has not shown a substantial need for this research.

ACA must respond to interrogatory 18 and request for production 14 within ten days of the date this order is filed. However, ACA may exclude legal research conducted in anticipation of this litigation. ACA is reminded that Rule 26 requires a privilege log for withheld information. *See* FED.R.CIV.P. 26(b)(5)(A).

### Conclusion

To the extent stated above, Anchondo's motion to compel is granted. In all other respects, the motion is denied.

IT IS SO ORDERED.